JAMES ROSS et als. *v.* J. W. CROCKETT et als.

Where church membership is a necessary qualification of the trustees who are to manage the affairs
of the corporation, a trustee who withdraws himself from the church and joins a church of another
denomination, which latter church prohibits a connection by its members with the former, such
trustee will be considered as having abandoned his office of trustee, and as having no further in-
terest in the property of the church he has left.

A majority of the Board of Trustees cannot undertake to act in their individual names for the board it-
self, and no act can be done affecting the ownership of property, except by a resolution of the board
when regularly constituted and sitting in consultation.

APPEAL from the Third District Court of New Orleans, *Duvigneaud, J.*
B. J. Sage, for plaintiffs. *C. Roselius* and *E. A. Bradford,* for defendants
and appellants.

MERRICK, C. J. This case was before the court in 1854, and was remanded
for further proceedings. The judgment of the lower court was, however, affirmed,
so far as it dismissed the suit as to the " Christian congregation." For a state-
ment of facts, as far as the case had then progressed, we refer to 9 An. 337. It
will there be seen that the suit was remanded for the purpose of trying the rights
of the plaintiffs to the office of trustees of the Elijah Steel Church.

After the case was remanded, the plaintiff, *James Ross,* caused himself to be
dismissed from the suit, and the Elijah Steel Church was made a party defen-
dant, as contemplated by the decree.

Service was made upon the officers of the corporation *de facto,* and, at the in-
stance of plaintiffs' attorney, also upon *James Ross,* styled by the plaintiff, Presi-
dent of the Elijah Steel Church. *Mr. Ross,* without any resolution of the board
of trustees authorizing the same, undertook to answer for the corporation, and
filed an answer confessing the plaintiffs' demand. The plaintiffs also disregarding
the former decree of the court, amended their petition, and a second time made
the Christian congregation a party defendant.

After a trial on the merits, a decree was rendered, declaring the plaintiffs and
four of the defendants, the only trustees of the church, and annulling the sale to
the Christian congregation, of the property sold by Elijah Steel Church to that
congregation.

On the trial of the case, the greatest latitude was given by the parties to the
introduction of evidence, in order that everything which could throw light upon
this transaction, might be made available, and hence much irrelevant testimony
has been admitted, which is without any legal influence on the questions we have
to decide.

It is quite evident that the unhappy differences which have arisen between
these parties, are the result of a want of unanimity in judgment as to what was
the interest of the church, and it is not necessary to suppose that they were con-
trolled by any other motives.

The plaintiffs ask the court to do a vain thing, to restore them to the office of
trustees of the church, for it is evident that they do not intend to act as such,
and most of them have united themselves to churches of other denominations,
where they cannot, according to the rules of those societies, longer act as mem-
bers or trustees of this church. One has moved away.

*Moses Greenwood,* one of the plaintiffs, says : that " he presumes that his place

Ross
*v.*
Crockett

as trustee of the Elijah Steel Church has been filled. It is now a prosperous and harmonious church. It is one of the largest of that denomination in this city. *He has no design to become a trustee of that church again.*"

*James Ross,* and two others of the plaintiffs, joined the same Presbyterian church with *Mr. Greenwood.* By the rules of this church, their membership and connection with other churches ceased. A fair construction also of the rules of the church which they left produce the same effect.

Why, then, should the harmony of the church be again disturbed by restoring corporators, who have not the qualifications to hold the office, and no intention to serve in that capacity ?

It is not only necessary that a plaintiff should have a right at the commencement of his suit, but it must continue until the day of the judgment. Thus the plaintiff whose debt is paid, compensated or novated during the pendency of a suit, must see a judgment rendered against him. So, too, if an administrator, tutor or executor, is destituted of his office during the pendency of the suit, judgment must be rendered in favor of his successor. We will recur to this branch of the case again, after noticing another point relative to the portion of the decree annulling the sale to the Christian congregation.

It is plain, we think, that the plaintiffs who sue simply as corporators, cannot stand in judgment for this part of their demand. The corporators cannot act singly nor sue singly on account of the corporation. And as this touches the ownership of property, it must be done by a regular resolution of the board, where the reasons for and against the measure, can be urged by the other trustees. The *conclusum universitatis* can only be formed in this manner. A majority of the board even cannot, without consultation with the others, and without any resolution of the board, undertake to act in their individual names, for the board itself. The Code says, what is due to the corporation is not due to any of the individuals who compose it. C. C. 428.

The suit to rescind the sale of the property to the Christian congregation, can only be sued for in a direct action in the name of the Elijah Steel Church against the former, and wherein the rights of the two churches can be contested between themselves, if it shall be their interest to have such controversy.

Returning now to the question, whether these plaintiffs have a right to be reinstated as trustees in the church, we will examine the proceedings of the board of trustees, after adverting to the provisions of the charter on the subject.

The first article of the charter is in the following words, viz :

"This corporation shall be governed by the rules and discipline of the Methodist Episcopal Church South, which now exist, or may hereafter, from time to time, be adopted by the general conference of the Methodist Episcopal Church South, provided that such rules and discipline be not inconsistent with the laws of the State of Louisiana."

By the " discipline" then in force, it was provided, on the subject of trustees, that :

"No person shall be eligible as trustees to any of their houses, churches, or schools, who is not a regular member of their church." And,

"No person who is trustee, shall be ejected while he is in joint security for money, unless such relief be given him as is demanded or the creditor will accept."

Provisions was made in the form of conveyances recommended by the General Conference to be followed, to secure church property and for the appointment of trustees. The property was to be held in trust and confidence :

Ross
*v.*
CROCKETT.

" That they shall at all times, forever hereafter, permit such ministers and preachers belonging to said church, as shall, from time to time, be duly authorized by the General Conferences of the ministers and preachers of said Methodist Episcopal Church South, or by the annual conferences authorized by the said General Conference, to preach and expound God's holy word therein ; and in further trust and confidence, that as often as any one or more of the trustees hereinbefore mentioned, shall die or cease to be a member or members of the said church according to the rules and discipline as aforesaid, then and in such case, it shall be the duty of the stationed minister or preacher (authorized as aforesaid) who shall have the pastoral charge of the members of the said church, to call a meeting of the remaining trustees as soon as conveniently may be, and when so met, the said minister shall proceed to nominate one or more persons to fill the places of him or them whose office or offices has (or have) been vacated as aforesaid. Provided, the person or persons so nominated, shall have been one year a member or members of said church, immediately preceding such nomination, and be at least twenty-one years of age ; and the said trustees so assembled shall proceed to elect, and by a majority of votes, appoint the person or persons so nominated to fill such vacancy or vacancies, in order to keep up the number of nine trustees forever ; and in case of an equal number of votes for or against the said nomination, the stationed minister or preacher shall have the casting vote."

In 1854, this provision was adopted in a more formal manner by the General Conference, and republished in the " discipline" as one of the general rules of the church.

It is argued, that as the form of trust deed recommended by the Methodist Episcopal Church South is inadmissible in Louisiana, these trustees did not, as to these subjects, adopt " The Church Rules," for they say they adopt them only so far as applicable and consistent with the laws of the State.

It is quite true, that a proviso is contained in the Act of incorporation, that the regulations of the discipline are adopted only so far as not inconsistent with the laws of Louisiana, but this we think does not prevent the Methodist Episcopal Church South, from carrying into effect the general regulations of such church, in the forms authorized by our law, and there is no reason why the whole " discipline" should not be examined in order to ascertain the polity of such church.

It appears to us, there is nothing unreasonable in construing the discipline to mean, that trustees who were members of the Methodist Episcopal Church South at the time of their appointment as such trustees, do abandon their office when they withdraw themselves from the church and join the churches of other denominations, particularly when the new church also prohibits a connection with the old. What further interest can they have in the property of the church, which they have abandoned, when they are pledged to advance the interest of the church to which they have newly attached themselves ? Is it not but reasonable to suppose that they have abandoned the office which they held, when they abandoned the church for the benefit of which it was established ?

It is true, it has been shown, that in some cases churches have been organized by appointing trustees who were not members of the Methodist Church at the time of their appointment. But this appears to us to be a matter of expediency in organizing a new church, when there are not a sufficient number of male members to form a board of trustees. The disability of such trustee, is known at the time of his appointment, but it is otherwise, where a member of the church is appointed trustee, and he afterwards voluntarily withdraws himself

Ross
*v.*
CROCKETT.

from that church and attaches himself to a church belonging to another denomination of Christians. It may well be supposed in the last case, that he abandoned the office as well as church. Such, we apprehend, would be the construction put upon the act by most persons.

The meetings of the board of trustees of the Elijah Steel Church were held at the church. The last meeting of the old board was held in July, 1848. It does not appear from the minutes how the trustees were notified of the meetings of the same.

On the 7th of January, 1850, a meeting was held at the usual place, there being only the four defendants present as trustees, and the preacher having the pastoral charge announced the vacancy of the office of the plaintiffs, and they proceeded to fill the same according to the mode directed in the discipline as above recited. This board held three meetings in February, 1850, and with its successors in office, it has continued to hold its meetings at the usual place ever since, and so it has continued to manage the temporal affairs of the church which, as the witnesses say, is a harmonious and prosperous church.

The plaintiffs also attempted to hold a meeting as a board. They met at the house of *James Ross*, on the 26th day of March, 1850, but it does not appear that any notice was given to the other trustees. They passed a resolution purporting to rescind a previous resolution to sell certain property. Since that meeting, it does not appear that plaintiffs have concerned themselves in any manner about the affairs of the church.

As to *James Ross*, he has voluntarily dismissed his action. *Messrs. Moses Greenwood, Newberry* and *Bowers*, have attached themselves to the Presbyterian Church. The *Rev. Mr. Curtis* has left the State, and is officiating elsewhere as a minister of the Methodist Episcopal Church South in another Conference.

*Hering* had not met as a trustee with the board for sometime previous to January, 1850, and was expelled for a breach of discipline April 6th, 1850.

It may be, as contended by the plaintiffs, that there were not sufficient grounds at the meeting on the 7th day of January, 1850, to declare the offices of the plaintiffs vacant, as was done. But, however that may be, these plaintiffs, if they desired to preserve their rights, ought to have preserved their qualifications to enjoy them. They ought not now to be permitted to disturb the property relations of two other churches, when they cannot have the slightest interest in either.

Judgment reversed, and judgment for defendant, with costs of both courts.