MONROE MERCANTILE COMPANY *et al. v.* ARNOLD & McCORD *et al.*

1. On the trial of an issue before a jury as to whether a conveyance or lien was created by the debtor with intent to delay or defraud creditors, and with such intent known to the party taking, a verdict finding no such intent to defraud, but an intent to delay, is not void for inconsistency or uncertainty. A substantial right of the creditor is involved in the time of performance by the debtor of his contract, and the debtor who attempts to postpone the time of payment endeavors to deprive his creditor of a valuable right, and thereby perpetrates a legal fraud, it matters not what his motive may be in such act.

2. When a corporation in a given matter is empowered to act only through its board of directors, or other select body of its officials, individual or separate action of the members of such board is not sufficient. The agent of the corporation is the board itself acting in its organized capacity, and not its members acting independently of its meetings.

3. When money is loaned to a corporation by one of its directors, and a note is given therefor, with the corporate name signed by its president, secretary, or treasurer, in which note it is stipulated that the payee of the note shall be protected in the event of a failure, or assignment, on the part of the corporation, if it should appear that this contract was not made through the duly authorized body of the corporation empowered to make such negotiation, the mortgage afterwards given to secure the note is void.

4. When a corporation has acted properly through its board of directors authorizing the president to borrow money, and stipulating that such money shall be secured by mortgage in the event the corporation should be sued, or its note protested, or whenever it shall become insolvent, the president, when acting as agent to carry out such an order, should be held strictly to its terms. Such provision in the contract does not empower him to execute an instrument in the name of the corporation, creating in the creditor the power of selling after ten days notice all of its assets; also creating in him the power, at his option, of treating the instrument either as a mortgage or deed, and of placing clerks in the mercantile store of the corporation for the purpose of conducting its business, and giving other extraordinary power not contemplated by the order or resolution of the board of directors.

5. Under the verdict in this case, construed in the light of the testimony, there was no error in the judgment and decree of the court, which in effect held void the mortgage purporting to have been given by the corporation to one of its directors.

Argued June 9,—Decided July 25, 1899.

Equitable petition. Before Judge Hutchins. Walton superior court. August term, 1898.

*Henry D. McDaniel* and *Arnold & Arnold*, for plaintiffs in error. *Napier & Cox, Foster & Butler, C. M. Walker, B. S. Walker*, and *A. J. Arnold*, contra.

Lewis, J. The Monroe Mercantile Company was a private corporation chartered for the purpose of carrying on a mercantile business in Monroe, Walton county, Georgia. Among its directors was Joseph H. Felker. On the 17th day of July, 1897, Felker, while a member of the board of directors of the corporation, loaned the company $1,500.00, for which he took the following note:

"$1,500.00.    Monroe, Georgia, July 17th, 1897.

Three months after date The Monroe Mercantile Company promise to pay to ⎯⎯⎯ or bearer, the sum of one thousand and five hundred dollars, with interest from date at the rate of twelve per cent. per annum, and ten per cent. attorney's fees additional if collected by law. This note does not carry with it any individual liability, but is the debt of said company; but it is nevertheless agreed that the said payee is to be protected in the event of any failure, assignment, etc. Witness our hands and seals.    The Monroe Mercantile Company [Seal];
                                per M. M. George, President,
                                J. B. Black, Secretary,
                                C. J. Black, Treasurer,
                                J. H. Felker, Director."

On the 18th day of October, 1897, at a meeting of the directors of the corporation, as appears from its minutes, the following resolution was adopted: "That the company, through its president, proceed to borrow twenty-five hundred dollars for three months, to meet bills and notes due, or about to be due." We fail to find in the record any other order or resolution appearing on the minutes of the corporation, touching the borrowing of the twenty-five hundred dollars, and no such record of any action at all in relation to the borrowing of the fifteen hundred dollars at or before the note therefor was given. In the oral testimony, however, evidence was introduced in behalf of the defendants below, to the effect that on the 18th day of October, 1897, the board of directors met, and action was taken in reference to the loan of twenty-five hundred dollars from J. H. Felker to the company, which loan had been talked about previously. There were present at that meeting all the directors, including J. H. Felker; also the president, M. M. George,

and the secretary. The loan was requested of J. H. Felker. He said he would loan the company the money if it would agree to give a mortgage preferring the amount of his loan, as well as the previous loan of July 17, 1897, of fifteen hundred dollars, in certain contingencies, the same as expressed in the note; the contract of giving the mortgage being expressed in the note. All of the directors agreed to make the loan, and to give the mortgage. It was some time before a decision was made whether to give the mortgage then, or to give the note with stipulation for the mortgage in future. It was decided to leave that matter as to *when* the mortgage should be given, to M. M. George, president, to decide. He finally decided to give the note as it was given, but not to give the mortgage at that time. As to the fifteen hundred dollars loan J. H. Felker testified that the money was furnished in good faith, and it was expressly stipulated at the time of the loan that he should be secured and preferred above all other creditors, and that he refused to furnish the money without this express understanding and agreement; but it nowhere appears in the testimony how the understanding or agreement was made. The twenty-five hundred dollars was advanced by Felker, who took the following note:

"$2,500.00.                    Monroe, Ga., Oct. 18th, 1897.

Four months after date the Monroe Mercantile Co. promises to pay                    or bearer the sum of two thousand and five hundred dollars, with interest from date at 12% per annum, payable quarterly, and 10% attorney's fees if collected by law. The undersigned members of said company pledge their honor as gentlemen to execute and deliver to the payee or holder of this note, as well as the note for fifteen hundred dollars, dated July 17th, 1897, and due 3 months after date, a mortgage on all the assets of said company to secure the payment of said notes or any part of them unpaid, on demand of said holder, whenever any suit may be instituted against said company, or any note due after Nov. 1st, 1897, shall be protested, or whenever the company shall become insolvent, or shall be placed in a position where a receiver could be appointed; and the individual honor of each of us is hereby pledged to prefer the two

debts aforesaid above all others.   It is understood there is no individual liability for the payment of this note.   Witness our hands and seals the day and year first above written.

The Monroe Mercantile Co. [Seal],

Attest, J. C. Black.          per M. M. George, Pres.
[Seal of the Company.]        T. J. Lowe, Secty."

It appears further that a like obligation was entered into by the company to give a mortgage to secure a debt due to George W. Felker, of equal dignity with that of J. H. Felker.  George W. Felker had been, but was not at the time, a director of the company.   George W. Felker demanded his mortgage some time in October following, and J. H. Felker, being informed of this fact, demanded the mortgage of the company giving him priority; but the president executed mortgages to each on the same day, and in the mortgage dated October 27, 1897 (which it seems was delivered on the following day), it was stipulated that the same was to secure both the fifteen hundred dollar and twenty-five hundred dollar notes above, with interest on each at twelve per cent. per annum, making four thousand dollars in all, besides interest.   It further stipulated that this money had been used in paying the debts of said company; that Felker would not furnish said money without the express understanding that his claim should be preferred above all others, and, in consideration of this, the mortgage covers all the stock of goods in the storehouse of the corporation, "it being the intention of the parties that the entire assets of the corporation, including its charter, should be embraced in the mortgage, also all future purchases."   The mortgage "irrecovably" empowers Felker, as agent and attorney, "to seize and take possession of said property, and at his option to sell, through clerks, a sufficiency of the same to pay his debt aforesaid or what may be due, and enough to pay all, if any should be due and unpaid, with all costs of such sale, or, after advertising said property for sale for ten days in three or more places in said County of Walton, shall sell the whole of said property for cash to the highest bidder; and said Felker, his agent or attorney, shall have the right to bid at such sale, and, if not purchased by him, to make good title to the purchaser or purchasers; or

said Felker, his agent or attorney, shall at his option foreclose this mortgage according to law; it being the intention of the parties to this instrument that the same is not merely a mortgage, but a deed which passes title, at the grantee's option. No parole agreement can change the terms of this contract." The mortgage further recites that it is of equal force and dignity with the mortgage of George W. Felker for two thousand dollars. It is signed in the name of the Monroe Mercantile Company by M. M. George, president. A few days after the execution of this mortgage, some time in November, 1897, George W. Felker instituted proceedings to foreclose his mortgage, and J. H. Felker, being informed of this, elected to avail himself of the power of sale in his mortgage, and to sell the property after ten days advertisement. He wrote out his notice, and commenced to advertise the property accordingly. On the 2d day of November, 1897, Arnold & McCord, and other unsecured creditors of the corporation, presented their equitable petition to the judge of the superior court, who granted the temporary restraining order therein prayed for, and appointed a temporary receiver to take charge of the property. This petition was filed the following day. It stated the amount and nature of the debts of the several petitioners, alleged the insolvency of the corporation, claimed that the mortgages given were intended to defraud and delay creditors, and were therefore void, and that they were void for the further reason that they were given without due corporate authority. The defendants denied the allegation of the intent to defraud or delay, and claimed that their mortgages were valid and should be paid out of the first assets of the company in the hands of the receiver. There were many allegations in the petition and answer, setting up other issues; but on the trial the case seems to have been narrowed down principally to the issue touching the validity of the mortgage given J. H. Felker. The issue was submitted to a jury on the trial on special questions, and the answer of the jury in its verdict was as follows:

"Questions of fact to be answered by the jury. *First.* Was the Monroe Mercantile Company solvent or insolvent on July 17th, 1897. Answer: Solvent. *Second.* Was the Monroe

Mercantile Company solvent or insolvent on October 18th, 1897? Answer: Solvent. *Third.* Was the Monroe Mercantile Company solvent or insolvent on October 28th, 1897? Answer: Insolvent. *Fourth.* What use was made by the company of the $1,500.00 loaned by J. H. Felker, on July 17th, 1897? Answer: Appropriated to the debts of the company. *Fifth.* What use was made by the company of the $2,500.00 loaned by J. H. Felker, October 18th, 1897? Answer: It was appropriated to the debts of the company. *Sixth.* Who were directors of the corporation at each of the dates above named? Answer: We find M. M. George, J. H. Felker, J. R. Black, 'Agt.' *Seventh.* Did or did not the directors authorize the secretary and treasurer or the president of the company to borrow the money from G. W. Felker and from J. H. Felker? Answer: They did. *Eighth.* If the directors authorized the borrowing of the money, was that authority given by them in any meeting held by them as directors, or by agreement not in such meeting? How was it done as to loan of each of the creditors, G. W. Felker and J. H. Felker? Answer: In part it was. G. W. Felker, $2,000.00, was by resolution in such meeting. J. H. Felker, $2,500.00, was by resolution in such meeting; but J. H. Felker, $1,500.00, was by an agreement. *Ninth.* If authority was given to borrow the money, was there or not authority given by the directors to give mortgages to secure the payment of the loans? Answer: There was. *Tenth.* If the jury answer that the corporation was solvent on July 17th, October 18th, and October 28th, 1897, when J. H. Felker loaned the money and took the mortgages, did or did not the taking of the mortgages have the effect to render it insolvent? Answer: It did have the effect to render it insolvent. *Eleventh.* For what purpose did the company or its officers borrow the money of J. H. Felker? Was it done in good faith to enable it to carry on its business for the benefit of the creditors and stockholders, or for the interest of the directors and stockholders, and not of creditors? Answer: For the purpose of paying debts. It was, and for the benefit of creditors and stockholders. *Twelfth.* Was or was not the mortgage given to J. H. Felker given with the intention to defraud or to delay the creditors

of the company? And if so, was the intention known to said Felker when he took the mortgage, or did he have reasonable grounds to suspect that such was the intention? Answer: Intention not to defraud, but to delay. It was. He did. *Thirteenth.* Did or did not the borrowing of the money of J. H. Felker and the giving of the mortgage to secure him injure other then existing creditors? Answer: It did, as giving a mortgage would render it insolvent. *Fourteenth.* Was it or not agreed at the time of the loan by J. H. Felker, of the $1,500.00, that he was to be protected and preferred in the event of any failure, assignment &c., and, at the time of the loan of $2,500.00 by him, that the company would execute and deliver to said Felker, or holder of the notes for both the $1,500.00 and the $2,500.00, a 'mortgage on all of the assets of said company to secure the payment of said notes or any part of the same unpaid, on demand of said holder, whenever any suit may be instituted against said company, or any note due after November 1st, 1897, shall be protested, or whenever the company shall become insolvent, or shall be placed in a position where a receiver could be appointed,' 'and to prefer the two debts aforesaid above all others?' Answer: It was so agreed and stipulated in the notes. *Fifteenth.* If either or all of the contingencies on which the mortgage or security to be given had arisen when the mortgage was given, which, if not all, of them had arisen? Why did J. H. Felker demand that the mortgage be given him in pursuance of the agreement in the notes at the time it was given? Answer: One, the demand of G. W. Felker for a mortgage. Because they had promised J. H. Felker the first mortgage. *Sixteenth.* Why was the mortgage not given when the loans were made? Was it not for the interest of the creditors and stockholders that the giving of the mortgage was postponed? Answer: Mr. M. M. George, the president, refused to sign the mortgage. It was for the interest of the creditors and stockholders to postpone giving a mortgage. *Seventeenth.* What are the dates and amounts of the notes held by J. H. Felker, and what is the date of his mortgage? Answer: The note for $1,500.00 was dated July 17th, 1897, and due 3 months after date, and the note

for $2,500.00 is dated Oct. 18th, 1897, and due 4 months after date, and bear 12% interest, and the date of the mortgage is dated October 28, 1897. *Eighteenth.* What amount is due on the note and the mortgage of G. W. Felker? Answer: Amount due, $1,094.54."

Upon this verdict the following decree was rendered as to the mortgage of J. H. Felker: "It is further ordered and decreed that the mortgage of J. H. Felker for the principal sum of $4,000.00 be and the same is null and void against the plaintiffs in this case; and it is ordered and decreed that the remaining fund in the hands of the receiver be paid out to said plaintiffs and said J. H. Felker on his said note of $4,-000.00 pro rata, he being allowed interest on his said debt at the rate of seven per cent. per annum from the date of his two separate notes." A motion for a new trial was made by the defendants upon various grounds, and, after hearing the same, the court rendered a judgment thereon, setting aside the verdict and granting a new trial as to all of plaintiffs named in a certain ground of the motion, there appearing no evidence to support the verdict as to them; and granting a new trial as to plaintiffs named in another ground of the motion, unless plaintiffs should, within fifteen days, remit in writing on the verdict and judgment all amounts in excess of a certain sum. The verdict in these particulars was cured of its defects by action of the plaintiffs. The only part of the judgment, therefore, on the motion for new trial involved in this case is as follows: "If J. H. Felker, although a director and chargeable with full knowledge of the condition of the corporation, had taken the mortgage in accordance with the terms of the notes, and not added to those terms and stipulations other powers and advantages, and although he exacted of the corporation a usurious rate of interest, the transaction may have been a legal and valid one as to other existing creditors; such a mortgage, without power of sale and action thereunder, would have given him the preference it was agreed he should have when he loaned the money. And so, while the jury may have mistaken the consequence of giving the mortgage, and the mortgagee's action under it, for "intention to delay" other creditors, doubting

the validity of the mortgage under the law and the facts as contained in the bill or found by the jury, the motion, as to all other grounds, excepting "5" and "8," is overruled and a new trial refused."

1. One of the contentions of counsel for the plaintiffs in error involved in this case is, that the court below placed an improper construction upon the verdict of the jury ; that, construing together the entire answers which the jury made to the various questions propounded to them, it was not their purpose to find that that there was any fraudulent intent on the part of the corporation, nor of Felker, to delay its creditors. It was plausibly and forcibly contended that, the jury having found that the loans of the two sums of fifteen hundred dollars and twenty-five hundred dollars were made in good faith at a time when the company was solvent, and that the money was expended for the payment of the debts of the corporation, there could have been no fraud whatever when the mortgage was given to secure these notes in accordance with the contract made at the time the notes were executed. But it will not do to construe the terms "delay" and "defraud" as used in Civil Code, § 2695, par. 2, as being synonymous. One of the legal and substantial rights which the law recognizes that every creditor has is the right to have his debts paid at maturity. It necessarily follows that any act done by the debtor with the intention of defeating that right, and with the intention of postponing or delaying a creditor in the collection of his debt to a period of time beyond that fixed in the contract, is a legal fraud upon the creditor. In this sense, therefore, is any intention to delay a creditor fraudulent in law. It does not follow that the intent to delay must be coupled with an actual moral fraud intended to be perpetrated by the debtor upon his creditor, in order for it to constitute such a fraud as will invalidate the conveyance. The debtor's motive in making a conveyance for the purpose of delaying creditors may be entirely honest. To illustrate: he might have reason to believe, for instance, that unless he takes some steps he will be pressed to the wall by suits of creditors, his property will be greatly sacrificed, and thus litigation would terminate,

not only in injury to him, but to the creditors also; and he might further conclude that if he can arrange to postpone such action it would inure to the benefit of the creditors themselves by enabling him to continue his businesss longer, and thus realize an opportunity of paying his debts in full. Now if a mortgage or a conveyance is made to a creditor with the purpose of bringing about a postponement of payment of the debt due other creditors, which fact is known to the mortgagee at the time of its execution, it matters not what the motive of the debtor may be in desiring to delay other creditors; this very intention itself constitutes legal fraud as distinguished from actual fraud. This question is thoroughly and lucidly discussed in Bump on Fraudulent Conveyances, § 21, as follows: "Fraud consists of unlawful conduct that operates prejudicially upon the rights of others." Again the author says (§ 22): "It is not necessary, however, that there should be an intent to defraud, in order to render a transfer void. The statute makes void all conveyances made with 'intent to delay, hinder, or defraud creditors.' This language implies that the intent to defraud is something distinct from the mere intent to delay or hinder, and that the latter alone will vitiate a transfer. The term fraud imports something of a more vicious character than the mere production of a delay of satisfaction." In speaking further on this subject the author says (§ 27): "The statute refers to a legal and not a moral intent, for one man's right does not depend on another man's moral sense. The moral sense is much stronger in some men than in others. The statute, therefore, supposes that every one is capable of perceiving what is wrong, and if one does what is forbidden, intending to do it, he is not allowed to say that he did not intend to do the forbidden act. A man's moral perceptions may be so perverted as to imagine an act to be fair and honest which the law justly pronounces fraudulent and corrupt; but he is not, therefore, to escape from the consequences of it. The law must have a more certain standard for measuring men's intents than each individual's varying and capricious notions of right and wrong." Further, says the author, "Fraud, therefore, does not necessarily impute a corrupt or dishonorable motive. Parties

may do what they consider perfectly fair, for the purpose of preventing a sacrifice merely, and with the intention of paying all the creditors ultimately, or may be animated merely by motives of affection or compassion, but the law does not sanction any contrivance for either defeating or delaying creditors, and invalidates such contrivances without regard to the motive of the parties." It is true the word "delay" in the statute is to be taken in its legal or technical sense, and not necessarily in its literal sense. For instance, where the sole purpose of a debtor is to secure his creditors, and there is no intent to either defraud or delay others, such preference of a particular creditor will be upheld, although the natural result of it may be to delay other creditors. Were the doctrine otherwise, it would be almost impracticable for a debtor to exercise the privilege of preference given him by law, for he can in good faith secure a creditor by making to him a conveyance of all his property, yet the natural result of that would be necessarily to delay, if not *prevent*, the collection of debts due to others. But whenever *the purpose* of a conveyance is to bring about such delay, then the law itself is violated, and the contract by which his property is transferred becomes tainted with a legal fraud. This doctrine has virtually been recognized by this court in the decision in the case of *Evans* v. *Coleman*, 101 *Ga.* 152, where it was held erroneous for a judge to charge a jury, in relation to such conveyance made by a debtor to a creditor, that such a conveyance is void if made with the intention to delay, hinder, *and* defraud creditors, instead of stating the acts voiding the conveyance disjunctively; thus indicating that the words as used in this statute convey an entirely different meaning. See opinion of Justice Fish in the case of *Conley* v. *Buck,* 100 *Ga.* 205 et seq. Our conclusion, therefore, is, that the verdict of the jury is not void for the reasons stated, and that they could consistently have found that there was no intention to defraud when the loan was made, or the mortgage in question given; and at the same time have found, without any reflection upon the motive of the parties, that the conveyance in question was executed for the illegal purpose of delaying the creditors.

2. It will be seen from the recitals of fact in this case above that when this fifteen hundred dollar loan was made, the record in this case is absolutely silent as to what action the corporate body took in reference to authorizing such transaction, and especially as to any action authorizing the stipulation embodied in the note that the payee thereof should be preferred in the event of an assignment by the company, or its failure.   It is true that the defendant Felker said, in his testimony, that when the loan was made it was distinctly understood he should be preferred in a certain contingency; but how this understanding was had, with whom it was had, whether at a regular meeting of the board of directors or a meeting of the stockholders, or there was a separate understanding with the individual members not at a regular meeting, or in any other authorized capacity, does not appear, nor can it be gathered from the record that the president of the company, or any other individual official, was invested with the power of making such a contract.   It seems that whenever action was taken to bind the company in such a matter, it was the board of directors who acted for the company, not individually, but as a body; and it is a fair inference from the testimony that it was that body's duty to make contracts for the borrowing of money and giving security for the payment thereof.   In 17 Am. & Eng. Enc. L. 83, it is declared: "The legal effect of investing the management of the affairs of a corporation in the board of directors is to invest the directors with such government and management *as a board,* and not otherwise.   This is in accordance with the general rule that the governing body of a corporation, as such, are agents as a board, and not individually.   Hence, it follows that they have no authority to act except when assembled at a board meeting.   The separate action individually of the directors is not the action of the constituted body of men clothed with corporate powers."   In the case of Baldwin *v.* Canfield, 26 Minn. 43, it appeared that the government and management of the affairs of a private corporation was vested in the board of directors.   It was there decided that the legal effect was to invest the directors with such government and management, as a board, and not otherwise; that the governing body of a

corporation are agents of the corporation only as a board, and not individually; that they have no authority to act for the corporation, save when assembled at the board meeting, and that the separate action, individually, of the persons composing such governing body, is not the action of the constituted body clothed with corporate powers. It appeared in that case that a deed to real estate belonging to the association was executed in its name by all the directors acting separately, and not as a board, and without any authority from the board of directors. It was held that the conveyance was void, and equally ineffectual as a contract to convey. See also Ross *v.* Crocket, 14 La. Ann. 811; Stoystown Road Co. *v.* Craver, 45 Pa. St. 386 ; Cammeyer *v.* United German Lutheran Churches, 2 Sanf. Ch. (N. Y.) 186; Schumm *v.* Seymour, 24 N. J. Eq. 143.

3. One of the issues of fact in this case that was submitted to the jury was, whether or not the directors authorized the borrowing of the money, and if that authority was given them at any meeting held by them as such directors, or by agreement not in such meeting. In answer to that the jury found, as to J. H. Felker, the loan of the twenty-five hundred dollars was by resolution in such meeting, but that the loan of fifteen hundred dollars by him was by agreement. This evidently meant, in the light of the question put and of the issues between the parties, that when the fifteen hundred dollars was loaned it was not by virtue of any resolution passed at a meeting of the board of directors, but simply by agreement not in the meeting. We think it therefore follows from the testimony and the finding of the jury, that when the mortgage of October 27, 1897, was given to secure the payment of that sum, it was done at a time when the corporation was insolvent, and to secure an antecedent debt due one of its directors, and therefore the mortgage, at least in so far as it purports to be security for this sum, is void. As a general rule of law, there is no question about the proposition that an insolvent corporation can not convey or create a lien upon any of its property for the purpose of securing a debt it is due to one of its officers. The reason for this rule is very apparent. The directors of a solvent corporation are regarded in the light of agents and trustees of the company

itself, that is for its stockholders; but when the corporation becomes insolvent, the stockholders no longer have any legal interest in its assets. The creditors alone are concerned in their proper disposition and distribution, and hence the managing officers of the corporation when in a state of insolvency become, as it were, agents and trustees for the creditors themselves. In the management, therefore, of the property, after the failure of the corporation, the governing body of officers thereof are charged with the duty of conducting its affairs strictly in the interest of its existing creditors; and it would be a breach of such trust for them to undertake to give any one of its members any advantage over any other creditors in securing the payment of his debt in preference to all others. In the case of Jackson *v.* Ludeling, 21 Wall. 616, it was decided, in effect, that the managers and officers of a corporation are trustees, and therefore have no right to enter into a combination the object of which is to divest the company of its property and take it at a sacrifice. See this subject thoroughly discussed in the learned opinion delivered by Woods, J., in the case of Lippincott *v.* Shaw Carriage Company, 25 Fed. Rep. 577. On page 586 he says, "The weight of authority seems to be in support of this proposition. For, while it is generally conceded that a corporation, notwithstanding insolvency, continues possessed of a general power of management of its affairs, and like natural persons may give preferences by way of payment or security to one creditor or class of creditors over others; yet, in close analogy to the rule which forbids the giving of preferences by individual debtors for the purpose of securing, or in such manner as to secure, advantage or benefit to themselves, and in manifest accord with the tendency of judicial opinion as expressed upon consideration of kindred questions, it has been decided in a number of cases that preferences given by insolvent corporations in such manner as to be of special benefit to the directors or managing agents, or any of them, will be set aside. This, as it seems to me, is the salutary rule, and the only rule which can be administered with uniformity and fairness. Indeed, it has been often said by judges, including those of the Federal Supreme Court, that the property of an insolvent corporation is a

trust fund, and the directors trustees for the creditors; and, if this were strictly so, it is manifest that no preferences whatever could be allowed between creditors standing in the same relation to the fund." See the same views indicated in 2 Morawetz, Priv. Corp. § 787. In fact this principle is embraced in our Civil Code, § 1858, which declares, "Directors primarily represent the corporation and its stockholders, but when the corporation becomes insolvent they are bound to manage the remaining assets for the benefit of its creditors, and can not in any manner use their power for the purpose of obtaining a preference or advantage to themselves." In *Atlas Tack Company* v. *Macon Hardware Company*, 101 *Ga.* 391, it was decided that a mortgage given by an insolvent corporation, to secure an antecedent debt of a creditor, was not necessarily void because a director was indorser for the creditor; but it was clearly intimated it would be otherwise if the scheme was to secure the director. In *Lowry Banking Company* v. *Empire Lumber Company*, 91 *Ga.* 624, it was held that an insolvent corporation could not indemnify a director for loss by reason of his suretyship on a debt due the corporation, there being no agreement to do so when liability was incurred. We have seen that no such valid agreement, by the finding of the jury and the testimony in the case, was made as to this fifteen hundred dollar note when the same was executed. In *Milledgeville Banking Company* v. *McIntyre Alliance Store*, 98 *Ga.* 503, it was held that a corporation could give a mortgage to secure a debt though the director was indorser, if done in good faith. It appears from the record, however, in this case, that the agreement to give the mortgage in question was evidently made in contemplation of the corporation's insolvency. It is to our minds a very serious question whether or not such an agreement could be enforced by an officer of the company, in the face of the well-known rule of law, that after insolvency no officer can take any advantage of other creditors in the disposition of its assets. The case, relied upon by counsel for plaintiffs in error, of *Bower* v. Brooklyn Trust Company, 21 N. Y. Supp. 324, does not help to sustain his contention in favor of the validity of this mortgage. It is true it was decided there

that a mortgage by a corporation after its insolvency, in pursuance of an agreement made to secure advances before any expectation of insolvency, was valid; but it was clearly implied in the decision that in order to render it valid it must not be made in contemplation of insolvency.

4. The record shows in this case that there was no effort made by the corporation to borrow the twenty-five hundred dollars from any one else than one of its directors, or to get the money at any less per cent. than twelve per cent. per annum. This director, Felker, was the owner of the store where the business was conducted, and he rented the same to the corporation. It appears in the testimony that Felker entered the meeting called to arrange for the borrowing of the money, with a note and mortgage written out for the loan in his pocket. It does not appear that any resolution was adopted at the meeting authorizing the payment of twelve per cent. or paying interest quarterly. The charge itself was contained in the mortgage. There was no testimony that the board of directors, by resolution or otherwise, ever authorized the president to give a mortgage containing the extraordinary power of sale after ten days advertisement, as was conferred upon the mortgagee in this case; nor was any such power conferred by the board that the mortgagee should have the right to seize and sell the stock of goods through clerks; and nothing whatever was done by that body empowering the president to confer upon Felker the privilege of treating the instrument delivered to him either as a deed or a mortgage at his option. Manifestly, then, the president of the company in making this mortgage transcended the power delegated to him by the corporation. In this matter he was nothing but the agent of the corporation, and in the execution of the trust reposed in him should have been governed entirely by the terms of the agreement made by the governing body of the corporation, to wit its board of directors, with Felker. In this particular matter, acting purely as the agent of the corporation by virtue of the power delegated to him by the board of directors, he could not transcend the power conferred upon him. See *Dobbins* v. *Etowah Manufacturing Company*, 75 *Ga.* 238. It appeared in that case that the super-

intendent of the company, employed as its agent, had transcended the authority that had been delegated to him, in giving certain notes intended to bind the company. It was decided that the notes were void, and on page 243 Hall, J., says, "It would not avail the plaintiff that the company held out this party as an agent to bind it in this manner; for he knew, or is presumed to have known, its powers under the charter, and he swore he had seen the paper under which the agent acted, before he would advance the money for the company. That he was mistaken as to the authority of the agent and the extent of his power to bind his principal, and that he parted with his money under the mistaken belief that he was dealing with the corporation, and that it would thereby and in that manner become bound to him as its creditor, may, perhaps, be probable; but this belief, without more, would not render it liable on these notes." So in this case Felker as a director, present at the meeting when the resolution was adopted to prefer his note with a mortgage in the event of certain contingencies, knew when he received this mortgage that it contained stipulations that had never been authorized by the corporation through its governing and controlling body of officers. The power conferred by a corporation upon its agent simply to give a mortgage in the name of the company to its creditors on certain conditions, and especially if such creditor be a director also of the corporation, simply carries with it the power to create a mortgage in its usual form, to be enforced in the usual method by proceedings in court; and does not confer upon him the power to give an instrument which may be treated by the mortgagee either as a deed, bill of sale, or mortgage, with the power in the mortgagee to seize the property and administer it as his own, or at his option to seize it and sell after ten days advertisement. This is giving an advantage to an officer of the company over its other creditors never contemplated by the board of directors, and making such disposition of the assets of the corporation in favor of a member thereof, and against other creditors, as is obnoxious to the law.

5. There were several other grounds in the motion for new trial, but the above views necessarily control the real issue in-

volved between the parties.    Even if the contention of counsel for plaintiffs in error is correct, that the jury did not intend to find a verdict the effect of which was to show an intent on the part of the mortgagor and mortgagee to delay creditors in the legal sense of that term, yet, under the facts of this case, no other verdict save one finding the mortgage in question invalid could properly be rendered, and the judgment of the court cancelling the mortgage will not, therefore, be reversed.

*Judgment affirmed.    All the Justices concurring.*