### 410.   SHEFFIELD *et al.,* administrators, *v.* JOHNSON COUNTY SAVINGS BANK.

1. Writing and signature are necessary to the formal indorsement of a negotiable instrument; but no particular form of signature is necessary, any form adopted as such being sufficient. A seal is unnecessary to its sufficiency, whether it be that of a private person or of a corporation.

2. In a suit by the plaintiff as the transferee of a negotiable instrument, a written indorsement thereon, bearing as the signature only the corporate name of the payee, not accompanied by the name of the agent by whom affixed nor by the corporate seal, is nevertheless sufficient, proof of the transfer, unless the indorsement be specifically denied on oath.

3. While by common law and by general law, as recognized in most of the American States, and possibly in this State, if the defendant in an action by the legal holder of a negotiable promissory note shows that the note was procured by fraud or duress, or that it is founded upon an illegal consideration or an original total lack of consideration, the burden of proving that he is a bona fide holder for value is cast upon the plaintiff, yet no such result follows from proof showing mere failure of consideration, total or partial.

4. The verdict directed in this case is larger in amount than the proof warrants.

Complaint, from city court of Blakely—Judge Jordan.   March 21, 1907.

Argued June 21,—Decided June 26, 1907.

*Pottle & Glessner, R. H. Sheffield,* for plaintiffs in error.

*Bush & Stapleton, Oliver & Russell,* contra.

POWELL, J.   The plaintiff sued upon a negotiable promissory note made by the defendants' intestate, payable to the New England Jewelry Company.   Upon the back of the note was an indorsement as follows: "March 2, 1903.   For value received, we hereby sell and assign the within note to the Johnson County Savings. Bank.   New England Jewelry Co."   The defendant pleaded, and attempted to prove, that the consideration of the note was jewelry, alleged to be good serviceable gold-plated and gold-filled jewelry, sold by the New England Jewelry Company to the defendants' intestate; whereas a lot of brass jewelry was delivered, worth only about one fourth as much as the jewelry contracted for.   There was no evidence of the circumstances under which the plaintiff's. title to the note was acquired, except the written transfer set forth

above. The court excluded the testimony offered by the defendant, showing that the jewelry was brass and worth only a small amount, and directed a verdict for the plaintiff.

1, 2. The plaintiffs in error concede that if the plaintiff in the court below is to be conclusively considered as a bona fide holder for value, their defense was not available to defeat a recovery. They contend, however, that the indorsement on the note was prima facie insufficient; that the name New England Jewelry Company connotes a corporation; that a corporation can act only through an agent; that when no corporate seal is attached there is no presumption that the signature is genuine. This exact point was made in each of the following cases: Templeton *v.* Heyward, 62 Ill. 178; Walker *v.* Krebaum, 67 Ill. 252; Second National Bank *v.* Martin, 82 Iowa, 442, 48 N. W. 735. In all of them the contention is overruled. In speaking of a similar indorsement, the court, in the case last cited, says: "But, in our opinion, the signature of the indorsement is sufficient as it appears. A little thought will make this plain. The name of the corporation written on the back of the instrument is in fact the signature of the indorser, just as it would be if it were shown that it was made by an officer of the corporation that signs it. It is the corporation that does the act by the officer, for it has not hands, and can not write. When the name is found written upon the notes, it is known that it is intended as the indorsement in blank. If the name be written there by an officer having authority, it will bind the corporation, upon that fact being established, though the officer's name be not subscribed to, nor appears in, the instrument. It can not be doubted that had defendants raised an issue presenting the question whether the name of the corporation was written upon the notes, for the purpose of indorsing them, by the officer clothed with authority so to do, the plaintiff would have been permitted to present evidence supporting the indorsement by showing the authority of the one making it, and his intention to bind the corporation as an indorser. Now, as no such issue was raised by the defendants' answer, the sufficiency and validity of the indorsement stands as admitted in the case." See also 7 Cyc. 792; *Habersham v. Lehman,* 63 *Ga.* 380; *Neal v. Gray,* 124 *Ga.* 511 (3), 515, 52 S. E. 622; *Tyson v. Bray,* 117 *Ga.* 689, 45 S. E. 74. It is true that the signature, not purporting to be made by any particular

agent authorized to act for the corporation and not being accompanied by the corporate seal, does not import its own authenticity; but the defendant, by not denying the indorsement under oath, conclusively admits its genuineness. Civil Code, §3705. The case of *Dodge* v. *American Freehold Co.*, 109 *Ga.* 394 (2), 34 S. E. 672, relates to the method of proving the execution of an instrument not constructively and conclusively admitted to be genuine by a statutory rule of pleading, as is the case with this indorsement. The principles announced in the first two headnotes are now so well established by the current of authority as to admit of no serious question.

3. When a plaintiff introduces in evidence a negotiable promissory note duly assigned to him before maturity, the presumption immediately arises that he is a bona fide holder for value and is entitled to protection against equities and defenses which the maker might have against the original payee. At common law, if the defendant showed by his proof that the note was procured by fraud or duress, or that it was founded upon an illegal consideration or an original total lack of consideration, the burden was shifted to the plaintiff to show that he did in fact receive the note in ordinary course of trade, in good faith, for value and without notice of the defenses; and this seems to be the rule recognized in most of the American States, and possibly in Georgia. See Norton on Bills and Notes, 243; 2 Gr. Ev. (16th ed.) §172; Duncan *v.* Scott, 1 Camp. 99; Miller *v.* Race, 1 Burr. 452; 8 Cyc. 236-238. But "mere evidence of failure of consideration or partial failure of consideration is not sufficient to throw upon the holder the burden of proving that he obtained the paper in good faith." 8 Cyc. 239, and cit. The defendant's plea and tendered proof alleged and showed only a partial failure of consideration.

4. The note was payable in five equal instalments, due seriatim on the 20th day of the following months: January, April, July, and October, 1903, and January, 1904. It contained the following provision: "Any instalment past due to draw six per cent. interest per annum; if not paid within ten days after due, the whole note to become due on the option of holder." The first instalment appears to have been paid. (Otherwise the plaintiff would have fallen within the purview of the latter portion of Civil Code, §3695.) The court directed a verdict for the aggregate princi-

·pal of the four other instalments, "with interest on that amount at 6 per cent. per annum from April 20, 1903." In this direction as to interest we find error. The instalments bore no interest until after the maturity of each. The plaintiff had the option to declare the whole note due for a default in the payment of any instalment;. but it was not obliged to do so. The entire note did not ipso facto· become due when the first instalment became past due; it required. affirmative action on the part of the holder to effectuate this result. The holder of the note might have preferred to retain it as a contract maturing instalments, with the privilege of suing on each instalment in a justice's court, rather than to convert it into a single demand above justice's court jurisdiction. We cite this as one of a number of possible considerations why the law will not presume the exercise of the option on the plaintiff's part. We are not prepared to say that the plaintiff could hasten the maturity of the notes, even by an exercise of the option, so as to make his entire demand bear interest from that date; though as to this we are not. called upon for a decision at present. The court having directed the verdict for too large a sum, a reversal results. *Kelly* v. *Strouse,* 116 *Ga.* 874 (8), 43 S. E. 280.

*Judgment reversed.*