4929.　BLAKELY ARTESIAN ICE COMPANY *v.* CLARKE.

1. The following description of property, in a petition in an action of trover, was sufficiently definite: "all the iron machinery such as boilers, cans, piping, ammonia apparatus, etc., situated in the town of Blakely, along the line of the Central of Georgia right of way, and heretofore used by the defendant in the manufacture of ice; said machinery being the same machinery which was sold by the Huson Ice and Coal Company to the Union Point Ice Company and described in a written retainer-title note for the sum of $900.00, dated July 27, 1910, and payable January 1, 1911, to the Huson Ice and Coal Company, and signed by the Union Point Ice Company, by its president, and recorded in the office of the superior court of Greene county, on August 5, 1910, in Book 8, page 447."

2. An instrument executed in the name of a corporation by its president and under the seal of the corporation is presumed to have been executed by its authority, but this presumption is rebuttable.

3. A transfer in the following language, on the back of a note containing a reservation of title to property therein described, was adequate to pass title both to the note and to the property, and was sufficient to support an action of trover for the latter's recovery: "For value received, we hereby transfer and assign all the right, title, and interest we have in the within note, together with the security mentioned in said note, to C. A. Clarke. December 16, 1910. Huson Ice and Coal Company, by H. T. Huson, secretary and treasurer."

4. An instrument executed in behalf of a corporation and under the corporate seal, if capable of being admitted to record under the registry statutes, operates as notice to third persons of the presumptive power of the agent of the corporation to execute it, from the date of the filing of the paper for record, although it was so defectively recorded as to indicate that it was not an instrument under seal.

5. The president of a corporation has no power, by reason of his office alone, to buy, sell, or contract for the corporation, or to control its property, funds, or management. The evidence in the present case demanded a finding that the contract upon which the plaintiff relied was executed without the authority of the corporation whose name was signed thereto. Power conferred by the governing authorities of a corporation upon an agent, to renew a note payable to a named person, does not embrace the authority to convey property of the corporation as security for the payment of the note, unless it appears that in the original evidence of indebtedness the property had been conveyed as security.

6. There was no evidence in the present case to authorize a finding that the corporation had held out as its agent the person who executed the contract, in such a way as to estop it or its privies from pleading the want of the agent's authority.

7. The foregoing rulings deal with all the material questions likely to arise upon another trial. A new trial should have been granted because of erroneous instruction of the trial judge, and because the evidence demanded a finding that the instrument upon which the plaintiff relied

in proof of his title was executed without any authority from the cor-
poration in whose behalf it was made.

DECIDED OCTOBER 7, 1913.

Trover; from city court of Blakely—Judge Shcffield. April 21,
1913.

*Glessner & Park, Samuel H. Sibley,* for plaintiff in error.

*Rambo & Wright,* contra.

POTTLE, J.   Clarke sued the Blakely Artesian Ice Company in
trover, alleging that the defendant was in possession of certain
machinery used in connection with an ice plant sold by the Huson
Ice and Coal Company to the Union Point Ice Company, to which
the seller had reserved title; and that an obligation for a part of
the purchase-money, containing a reservation of title to the prop-
erty sued for, had been duly transferred from the Huson Ice and
Coal Company to the plaintiff.  The property was described in the .
petition as being, "all the iron machinery such as boilers, cans,
piping, ammonia apparatus, etc., situated in the town of Blakely,
along the line of the Central· of Georgia right of way, and hereto-
fore used by the defendant in the manufacture of ice; said ma-
chinery being the same machinery which was sold by the Huson
Ice and Coal Company to the Union Point Ice Company and de-
scribed in a written retainer-title note for· the sum of $900.00,
dated July 27, 1910, and payable January 1, 1911, to the Huson
Ice and Coal Company, and signed by the Union Point Ice Com-
pany, by its president, and recorded in the office of the superior
court of Greene county, on August 5, 1910, in Book 8, page 447."
The petition was· demurred to, on the ground that the property
sued for was not sufficiently described, and that no copy of the in-
strument upon which the plaintiff relied in support of his title was
attached to his petition.  By amendment the plaintiff attached a
document, dated July 22, 1910, reciting a promise to pay the Huson
Ice and Coal Company the sum of $900 principal, together with
interest, and attorney's fees in case of collection by suit.  The in-
strument further recited: "and to secure the payment of this note,
I hereby mortgage and convey unto said payee, its successors and
assigns, the following described property, to wit:   For purchase-
money on all the iron ice machinery, as boiler, cases, piping, am-
monia apparatus, in pay or [?]· plant at Union Point, Ga.; this
note being given for purchase-money of said machinery and title

to same to remain in payee until this note is paid in full." The instrument was signed as follows: "Witness my hand and seal the day and year above written. Union Point Ice Company (L. S.), by J. E. Carlton, president. In presence of L. D. Carlton, Notary." On the back of this document was the following transfer: "For value received, we hereby transfer and assign all the right, title, and interest we have in the within note, together with the security mentioned in said note, to C. A. Clarke. December 15, 1910. Huson Ice and Coal Company, by H. T. Huson, secretary and treasurer." To the petition as amended the defendant demurred on the following additional grounds: (1) No authority is alleged or shown in J. E. Carlton, president of the Union Point Ice Company, to execute the paper under which the plaintiff claims title; and (2) no authority appears in Huson, the secretary and treasurer, to convey the property in dispute to the plaintiff for the Huson Ice and Coal Company. The demurrers were overruled and the defendant excepted pendente lite. The trial resulted in a verdict for the plaintiff for the principal sum of $900, $184.50 interest, and $90 as attorney's fees. The attorney's fees being stricken, the verdict was left to stand, with the principal and interest as stated. The defendant's motion for a new trial was overruled and it excepted.

From the evidence it appears that the Huson Ice and Coal Company was formerly the owner of the property sued for, and that it opened negotiations with the Union Point Ice Company for the sale of the property, and the following terms of sale were agreed upon: $10,000, one half of which was paid in capital stock of the Union Point Ice Company, the other half to be paid either in cash or in notes given for stock in that company. According to the testimony in behalf of the plaintiff, $4,100 was paid in this way, leaving a balance of $900 still due. Huson, one of the witnesses for the plaintiff, testified, that the Huson Ice and Coal Company was given a note for $900, which he thought was for the balance of the purchase-price due on the machinery; that this note was turned over to Carlton, the president of the Union Point Ice Company, and that the paper under which the plaintiff claimed title was given in renewal of this note. Clarke testified that he bought this renewal paper for value from Huson Ice and Coal Company before maturity, without notice of any defense of the Union Point Ice

Company. There was introduced in evidence an extract from the minutes of the board of directors of the Union Point Ice Company of July 26, 1910, from which the following appears: "Mr. J. E. Carlton was authorized to renew a note for nine unsold shares in the plant to Huson Ice and Coal Company." These minutes do not appear to have been read and approved by the directors, but Huson testified that the directors, including Carlton, the president, were present and assented to the resolution. All the other directors testified that they knew nothing about such minutes; that no authority was given anybody to execute a paper to the Huson Ice and Coal Company, and that as a matter of fact the Union Point Ice Company was not indebted to the Huson Ice and Coal Company in any sum. Carlton was president, and Huson vice-president of the Union Point Ice Company. The document relied on as the basis of the plaintiff's claim of title was filed for record within thirty days after its execution, and when recorded the clerk omitted to record the words: "Witness my hand and seal the day and year above written;" so that it appeared upon the record that the paper was not a sealed instrument, though it was actually executed as such. Subsequently to the execution and recording of this paper, the Union Point Ice Company executed a conveyance to a third person to secure an indebtedness. Under this conveyance the property was brought to sale; and by an arrangement made between the Union Point Ice Company and W. A. Hall and others (who afterwards formed the Blakely Artesian Ice Company), the property was bought in by Hall and his associates. Hall testified that at the time of the purchase he had actual knowledge of the existence of the paper under which Clarke claims title. Although at the time of this sale Clarke's paper was past due, he made no effort to enforce collection, but waited some time after the plant had been set up in Blakely, and brought trover.

1. The description of the property sued for was sufficiently definite. *Pepper v. James, 7 Ga. App.* 518 (67 S. E. 218).

2. It was not essential that the petition should affirmatively set forth the authority of Carlton as president to execute the paper upon which the plaintiff relied. The paper was under seal. The corporation had authority to adopt any device it saw proper to use as a seal for the particular occasion. Being regularly executed under seal, the presumption was that the president had authority to

execute the instrument; although this presumption was rebuttable. *Nelson* v. *Spence,* 129 *Ga.* 35 (58 S. E. 697); *New York Life Ins. Co.* v. *Rhodes,* 4 *Ga. App.* 25 (5), 29 (60 S. E. 828); *American Investment Co.* v. *Cable,* 4 *Ga. App.* 106 (3-4), 110 (60 S. E. 1037); *Cannon* v. *Gorham,* 136 *Ga.* 167 (3) (71 S. E. 142, Ann. Cas. 1912C, 39); 3 Cook on Corporations (6th ed.), § 722.

3. The transfer to the plaintiff on the back of the instrument was adequate to transfer not only the indebtedness but also the title, and was sufficient to enable the plaintiff to maintain trover for the recovery of the property. *Dawson* v. *English,* 8 *Ga. App.* 585 (69 S. E. 1133); *West Yellow Pine Co.* v. *Kendrick,* 9 *Ga. App.* 350 (71 S. E. 504); *Townsend* v. *Southern Product Co.,* 127 *Ga.* 342 (56 S. E. 436, 119 Am. St. R. 340). This transfer, together with the possession of the paper, was sufficient evidence of the plaintiff's title, and the petition was not demurrable on the ground that it did not appear therefrom that Huson had authority to transfer the paper in behalf of the corporation. See *Sheffield* v. *Johnson County Savings Bank,* 2 *Ga. App.* 221 (58 S. E. 386).

4. It is further suggested that, inasmuch as the instrument executed by Carlton was defectively recorded, its record could not operate as constructive notice to those under whom the defendant claims title and who hold a conveyance junior in date to the paper under which the plaintiff claims title. This paper took effect as against third persons without notice from the time it was filed for record, and, to operate as notice, it was not essential that the clerk should have recorded it at all, nor does the fact that it was defectively recorded prevent it from being notice to third persons. *Durrence* v. *Northern National Bank,* 117 *Ga.* 385 (43 S. E. 726); *Wadley Lumber Co.* v. *Lott,* 130 *Ga.* 135, 141 (60 S. E. 836). This being so, the defendant can not stand on the proposition that Hall and his associates were purchasers with notice from persons without notice.

5. While the paper transferred to Clarke bore on its face presumptive evidence of the authority of the corporation for its execution, this was a rebuttable presumption, and the defendant was not precluded from showing that the president of the corporation had no authority to execute the instrument in its behalf. "The mere fact that a deed had a corporate seal attached does not make it the act of the corporation, unless the seal was placed to it by some one

authorized." 1 Clark & Marshall on Private Corporations, 510. The presumption of authority to execute an instrument, arising from the fact that the corporate seal was attached thereto, may be overthrown by proof that the seal was affixed without proper authority from the board of directors or some other duly authorized corporate agent. 3 Cook on Corporations (6th ed.), § 722. "The president of a corporation has no power, by reason of his office alone, to buy, sell, or contract for the corporation, nor to control its property, funds, or management. His duty is merely to preside at meetings of the board of directors, and to perform only such other duties as the by-laws or resolutions of the board of directors may expressly authorize." Id. § 716; *Brown* v. *Bass,* 132 *Ga.* 41, 43 (63 S. E. 788); *Minn. Lumber Co.* v. *Hobbs,* 122 *Ga.* 20, 24 (49 S. E. 783); *Ocilla Sou. R. Co.* v. *Morton,* ante, 504 (79 S. E. 480). It follows that the mere fact that one may be designated by the stockholders as the president of the corporation does not confer upon him either actual or presumptive authority to execute a contract in behalf of the corporation. His actual authority is only such as is conferred either by the by-laws adopted by the stockholders or by resolutions of the board of directors, duly passed. The only authority conferred upon the president by the by-laws of the Union Point Ice Company was to preside over the stockholders' and directors' meetings. The general manager was given the authority to manage the ice plant, and the secretary and treasurer was directed "to sign all vouchers, agreements, claims and other important papers, and make purchases and sales for the corporation."

The minutes of the board of directors must therefore be looked to, to determine what actual authority Carlton had to execute the contract upon which the plaintiff relied. It is conceded that no such actual authority was conferred by the directors, unless it be embraced in the minutes of July 26, referred to in the statement of facts. Carlton himself, and all the directors, testified that he had no authority from the directors to execute the paper; and Huson, the chief witness for the plaintiff on this question, did not claim Carlton had any actual authority, unless it was conferred by the directors at the meeting above mentioned. The question of the president's authority to execute this paper must, therefore, depend upon the construction of this resolution of the board of directors. By it Carlton was "authorized to renew a note for nine

unsold shares in the plant of Huson Coal and Ice Company." Nothing is said about the execution of any title to the property as security for the debt; nor does this resolution confer express authority upon Carlton to pledge any of the corporation's property as security for the payment of this debt. It is true, he was authorized to renew a note. On its face he had authority to execute only an ordinary promise to pay without security; and if nothing more had appeared, it would be clear that no authority had been conferred upon the president to execute any paper in which the Huson Coal and Ice Company should have title to any of the corporation's property. If it had appeared that the note previously executed to the Huson Coal and Ice Company for $900 was one in which that company retained title to the property sold to the Union Point Ice Company, it would be clear that the authority had been conferred upon Carlton to execute a new paper in which title would be retained in the payee of the note. But nothing of this sort appeared from the evidence. All that appeared on this subject was from the following testimony of Huson: "I was at this meeting July 26, also September 19. I was there when Mr. Cunningham made the motion to raise $3,500, and when the motion was made to pay me the $900. I remember the motion very clearly. Mr. Cunningham made a motion to authorize Mr. Carlton to borrow $3,500, and another to renew a note for $900 that I had. It was a note for $900 that the Union Point Ice Company gave Huson Ice and Coal Company, which I think I turned over to Mr. Carlton. I think it was given for the purchase of this machinery. I haven't got it now." To meet the apparent want of authority in Carlton as evidenced by the resolution of the board of directors, it was incumbent upon the defendant to show there had been an original note containing a retention of title, which Carlton was authorized to renew. All except Huson testified affirmatively that no such note was executed. And Huson testified merely that he had had a note for $900, but did not testify that this note contained a retention of title to the property in the payee. This being so, the evidence demanded a finding that Carlton had no actual authority to execute the paper upon which the plaintiff relied. When a corporation authorizes its president to borrow money, the president, when acting as agent of the corporation to carry out such authority, should be held strictly to its terms. *Monroe* v. *Arnold,* 108 *Ga.* 449 (4), (34

S. E. 176). The defendant relies on the doctrine stated in 10 Cyc. 766, 1182, to the effect that "the power to borrow money carries with it by necessary implication the power to give the usual security for the loan." The author was, however, discussing the power of the corporation as contained in its charter, and simply stated the rule that, where a corporation has in its charter the power to borrow money, it has the incidental power, by necessary implication, to do any act necessary to enable it to borrow the money, such as give security therefor. The subject there under discussion was the ultra vires power of corporations, and not intra vires, as in this case; and is quite a different thing from mere authority conferred by the corporation on an agent to execute a note for the payment of an indebtedness of the corporation. The authority to pledge the property of the corporation as security for a note will not be implied from the mere authority to one of its officers to execute the note.

6. The defendant invokes the well-settled rule that, where a corporation holds out a person as its officer, it is bound by any act apparently within the scope of his authority, notwithstanding a limitation upon the power of the officer by a by-law or otherwise, not known to a party dealing with him as such. *Johnson* v. *Waxelbaum Co.*, 1 *Ga. App.* 511 (58 S. E. 56). It relies also upon the well-settled rule that a person who has held out another as his agent and thus induced third persons to deal with him as such, is estopped as to third persons from denying the agency. *Fitzgerald Cotton Co.* v. *Farmers Supply Co.*, 3 *Ga. App.* 212 (59 S. E. 713). We have already seen that the power to execute contracts is not within the apparent scope of the authority of the president of. a corporation; nor is there anything in the evidence to authorize the application of the principle of estoppel by. reason of the fact that the Union Point Ice Company held Carlton out as its general agent, having power to execute contracts in its behalf. It does appear, from extracts from the minutes of the directors at various times, that Carlton was authorized from time to time to borrow money. In some instances he was authorized specifically to execute a mortgage or a security deed; and in others, the authority was conferred upon him simply to borrow money. But in every case the person from whom the loan was to be obtained was mentioned, and the terms of the loan were stated. The mere fact that a corporation may on several occasions have conferred specific authority upon an agent to

execute a particular contract or make a particular loan upon stated terms does not authorize the inference that he had general authority to contract in behalf of the corporation, either for the purpose of borrowing money or for any other purpose, but, on the contrary, the inference of a lack of general authority would arise. The appointment by a corporation of a special agent for a special purpose, no matter how often made, does not authorize other persons to deal with him upon the theory that he is a general agent of the corporation with power to contract in its behalf, or estop the corporation or its privies from challenging the power of the agent to execute a contract which the directors had given him no authority to make. There was no evidence authorizing a charge to the jury on the subject of estoppel by reason of the fact that the corporation had held out Carlton as its general agent having apparent authority to execute the contract; and the instructions of the trial judge upon this subject were erroneous.

7. The foregoing deals with all the material questions which will likely arise upon another trial. Some of the instructions of the trial judge were not in accordance with the rulings here announced, and those requests to charge which set out principles of law in harmony with these rulings should have been given. The main ground, however, upon which the judgment of reversal is based is that there was no evidence to authorize the finding that Carlton had authority to bind the corporation by the conveyance of title upon which the plaintiff relied. We do not mean, of course, to hold that the plaintiff could not recover against the Union Point Ice Company upon the note as an evidence of indebtedness. This question he must test in a different forum.

<div align="right">

*Judgment reversed. Russell, J., dissents.*