C. L. BRICKER, Appellant, v. STROUD BROTHERS, Respondents.

Kansas City Court of Appeals, January 29, 1894.

1. **Bailment:** BAILEE ESTOPPED. In care of ordinary bailment, as with landlord and tenant, the bailee cannot deny that his bailor had the right and title of the property at the time of the bailment, though he may show that during the bailment he acquired the title.

2. ———: ———: ESTOPPEL BY CONTRACT: JUSTICES' JURISDICTION. Plaintiff mortgaged his horses to defendants and before foreclosure, he, at their request, loaned them the horses; on demand they refused to return the horses, and plaintiff replevied them. *Held,* defendants could not defeat the action by setting up their forfeited mortgage, as their contract of bailment bound them to return the horses on demand; and that such estoppel is by contract and is legal, not equitable, and therefore within the scope of a justice's jurisdiction.

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Tucker & Moore* for appellant.

(1) The defendants' claim of possession under the forfeited mortgage was fully met by the reply that they held under the contract of bailment, made subsequent to the forfeiture, commencing as a loan, and continued for hire; a fact incorporated in refused

instruction number 5, asked by plaintiff. The relation of bailor and bailee is the same as that of landlord and tenant; in neither of these peculiar contracts can the bailee or tenant deny the title under which he holds. It cannot avail as a defense against the bailor, to show the right of property and possession in defendants or a third person, unless it be shown that the defense arose since the contract of bailment, and the bailee has yielded (in case of a third person) to the paramount title. The bailee must return the property before he can set up title in himself. *Pulliam v. Burlingame*, 81 Mo. 111; *Sherwood v. Neal*, 41 Mo. App. 416; *Cole v. Railroad*, 21 Mo. App. 443; *Allgear v. Walsh*, 24 Mo. App. 134; *Dougherty v. Chapman*, 29 Mo. App. 233; *Walker v. Harper*, 33 Mo. 592; *Pentz v. Kuester*, 41 Mo. side page 447; *Grant v. White*, 42 Mo. 285; *Stagg v. Eureka Tanning Co.*, 56 Mo. 317; *Higgins v. Turner*, 61 Mo. 249; *Silvey v. Summer, Ib.* 253; Cobbey on Replevin, sec. 217, p. 106; Bigelow on Estoppel [4 Ed.], pp. 449, 490, 656; 2 Herman on Estoppel and Res Adjudicata [Ed. of 1886], secs. 740, 741, 893; 1 Greenleaf on Evidence [14 Ed.], sec. 207, p. 270, and cases cited; *Welsch v. Bank*, 94 Ill. 191; *Jones v. Howell*, 3 Rob. 438; *Lockwood v. Slevin*, 26 Ind. 324; *Simpson v. Wrenn*, 50 Ill. 222; Story on Bailment [9 Ed.], sec. 414, p. 374; *Martin v. Milling Co.*, 49 Mo. App. 23.

*Thurman & Wray* and *H. C. Timmonds* for respondent.

(1) If defendants, for any reason, or upon any theory, are to be held to have been plaintiff's bailees, still, having by virtue of their mortgage acquired his title to the property, as well as his right to the possession, they have a good defense in this case. *Higgins v.*

*Turner,* 61 Mo. 249; *Chaffin v. Brockmeyer,* 33 Mo. App. 92; *Pulliam v. Burlingame,* 81 Mo. 116; *The Idaho Case,* 93 U. S. 579; 2 Herman on Estoppel, sec. 481. (2) And, as this case originated in the court of a justice of the peace, who has no equitable jurisdiction, the plea of estoppel cannot avail anything. *Hicks v. Martin,* 25 Mo. App. 359; *Orr v. McCurdy,* 34 Mo. App. 418.

GILL, J.—This action was commenced before a justice of the peace, and is for the recovery of two horses. The case was tried on appeal in the circuit court, where defendants had a verdict and judgment, and from this plaintiff has appealed.

The facts necessary to be stated are about these: Prior to February 12, 1891, Bricker and the defendants Stroud were together engaged in the saloon business at Minden, Missouri. On that day Bricker bought out the interest of the Strouds, and on the following fourth day of April gave his note to them, in settlement, for $159.05, due seven days after date; and secured the same by a chattel mortgage on the two horses in controversy and other property. But Bricker continued in possession of the horses, and during the month of April paid to defendants, in cash, on the note and mortgage, an aggregate of about $115; and in addition to this defendants owed the plaintiff on a running account at the saloon about $46, which plaintiff claimed was to go as payment on the note. On or about May 1, defendants borrowed the two horses from plaintiff; and about the fifteenth day of that month defendants agreed with plaintiff that if he would permit them to use the team in the prosecution of their meat shop business, they would allow him whatever was reasonable and right.

Matters continued in this condition until about the

middle of July following, when Bricker asked for the return of the horses, but defendants refused to give them up and claimed a purchase thereof at the price of $150, which they said was to be paid in part by the balance due on the chattel mortgage and the remainder to be settled along with other unliquidated matters between them and the plaintiff. Bricker denied that he had agreed to sell the horses to defendants, said that he had only loaned or hired them, and demanded a return thereof. This being refused, this action in replevin was instituted.

At the trial the circuit judge gave a number of instructions concerning which, however, it is only necessary to state that the jury were told that defendants were entitled to their verdict in the event either *(first)* that there was a balance due on the chattel mortgage when the suit was begun, or *(second)* that defendants had purchased the horses from plaintiff.

Here is the question we have to determine on this appeal: Should defendants be permitted, under the circumstances of this case, to defeat plaintiff's action on the ground that, although defendants may not have bought outright the horses from the plaintiff, yet the plaintiff could not recover because there may have been at the institution of the suit an unpaid balance due on the chattel mortgage. We think not, and for that reason the judgment must be reversed.

This is unquestionably a case of ordinary bailment; and the rule prevails here, as with landlord and tenant, that the bailee cannot deny that his bailor had the right and title to the property *at the time of the bailment.* The bailee may show that, although the bailor had title when the relation between them begun, it had been since lost or parted with through, and by, some act of the bailor, such, for example, as that the bailee had, during the bailment, purchased the property from the

bailor, and the like. But *by force of the contract of bail-ment*, the bailee incontestably concedes that title and right of possession to exist with the bailor as will give efficacy to the arrangement under which he got possession of the goods. Bigelow on Estoppel [5 Ed.], 548; Cobbey on Replevin, sec. 217; 1 Greenleaf on Evidence, sec. 207; Herman on Estoppel, sec. 740; *Pulliam v. Burlingame*, 81 Mo. 111; *Sherwood v. Neal*, 41 Mo. App. 416, and other cases cited in plaintiff's brief. As said in *Pulliam v. Burlingame*: "The contract of bailment necessarily admits the right of possession in the bailor, and the obligation to return it to him at the termination of the term of bailment."

Admitting now all that these defendants can claim—that there was, in fact, a balance due them on the chattel mortgage, and that plaintiff was in default, and that by reason thereof defendants were, at law, entitled to possession of the mortgaged goods—and yet they were bound by the terms of their contract of bailment to return the horses to the plaintiff on demand, unless, indeed, they had, during the course of that relation, purchased the property from the plaintiff. For it must be remembered that when the horses were turned over to them (borrowed or hired, as the case may be) the title as between the parties, as well as right of possession, was precisely the same as when this suit was brought. At the time when defendants borrowed or hired the horses, the mortgage debt was then past due and not entirely paid (according to the defendant's evidence), so that the title to the property mortgaged and right of possession was then just as when defendants refused to surrender the same. There was then no change in title or right of possession occurring after the bailment begun.

But it is claimed by defendants' counsel that this doctrine that the bailee will not be heard to deny the

title of the bailor, is equitable in its nature, and such as cannot be invoked in a suit before a justice of the peace. This position is not maintainable; and its weakness consists in the assumption that this denial to the bailee is merely equitable estoppel. It is more properly called legal estoppel or *estoppel by contract,* " a term which is intended to embrace all cases in which there is an actual or virtual undertaking to treat a fact as settled; as, for example, "a contract based upon one's having a certain title to property will estop the parties, in the performance of the contract from claiming a different title." Bigelow on Estoppel [5 Ed.], pp. 450, 459, 460, etc. Or, as illustrated by another author; "If one accepts a lease and enters under it, he is estopped to claim any other estate in the land during the term; *nor can he show that he was the owner of the land when the lease was made.*" 2 Herman on Estoppel, sec. 740.

The bailor, then, has a legal claim under and by virtue of the *contract* with his bailee. The parties have agreed that the bailor then had title; it is a component part of that contract to take that matter as settled between themselves, and that the bailee will, at the termination of the bailment, restore the property to the bailor. The claim, then, of this plaintiff, is simply to enforce the contract he had with the defendants—it is legal, not equitable, and therefore within the scope of the justice's jurisdiction.

In our opinion, then, there was but one question in this case, to-wit: did the defendants, during the time they had possession of the horses under the contract of bailment, become purchasers thereof? They were estopped by their own contract from disputing plaintiff's title at the time they borrowed or hired the horses; but it was legitimate for them to show that subsequently, and during the course of the bailment,

that title had expired by reason of their purchase from the plaintiff. The existence of the mortgage was immaterial and had no place in the case, except as it might be shown as a consideration, or partial consideration, for the contract of sale.

The judgment will be reversed and cause remanded for a new trial. All concur.