1978, 1979.   PEPPER *v.* JAMES, and *vice versa.*

1. The court erred in directing the verdict, and also in admitting in evidence a mortgage, the execution of which had not been properly proved.
2. A bonded constable has such an interest in property upon which as constable he has levied as authorizes him to proceed individually by trover to repossess it.
3. Where a constable who has levied upon certain personal property authorizes another to deposit it with a third person for safe-keeping, with the understanding that it is not divested of the lien, the constable may by trover retake possession of it; and where there is an express agreement to the contrary, even its removal to another county does not defeat his right to repossess himself of the property for his protection. In such a case the constable does not relinquish possession, but merely

selects an agent to retain possession in his behalf, and the possession of the agent is still the possession of the constable.

4. The recording of a mortgage in the proper office in another State does not make a certified copy of it admissible in evidence, or dispense with proof of the execution of the original.

Trover; from city court of Blakély—Judge Jordan.   May 17, 1909.

Argued July 20, 1909.—Decided February 26, 1910. .

*H. M. Calhoun, L. L. Lyon, John R. L. Smith,* for plaintiff.

*Pottle & Glessner,* for defendant.

RUSSELL, J.   In this case the court overruled the demurrer to the plaintiff's petition, and, after the introduction of the evidence, directed a verdict in favor of the defendant.   The plaintiff thereupon filed a direct bill of exceptions, and the defendant thereafter presented a cross-bill of exceptions.   We will first consider the merits of the cross-bill.   The defendant excepts to the ruling upon the demurrer, and contends that the entry of the constable's levy, as made on the attachment, should have been rejected because the levy was too vague and indefinite to constitute a valid seizure.

1.   We think the court properly overruled the demurrer based upon the ground that the description of the property set forth in paragraph 2 of the petition was too general and indefinite to enable the property to be identified.   That paragraph of the petition alleged that the defendant had unlawfully converted to his use "the following personal property in his possession, to wit: one case window shades, one case thread, one case corsets, one case satchels, fifteen trunks of dry-goods, thirty-six cases shoes, eleven cases notions, five cases hats, eight cases cotton domestics, one bale bolting, one bundle glass, one box glass, and twenty-one rolls paper."   In response to the demurrer the plaintiff amended by adding to the second paragraph the following, to wit: "being the same property delivered to the defendant, D. W. James, by the plaintiff, W. T. Pepper, constable, to be stored and held by said defendant for use of the said plaintiff on the 24th day of January, 1904."   We think that with this amendment, the description of the property sought to be recovered in trover was sufficient to identify it, and to enable the jury to frame a verdict, and full enough to authorize the court to render judgment, in case it was found that the defendant should restore the property.   No exact rule can be prescribed as a measure of description.   Particularity of description must necessarily vary

in degree, according to the nature of the articles to be described, and the circumstances which may tend to render their identification perfect. The nature of the articles in this case was hardly such as to permit a more definite description than that given of them. If the various objects described were in fact boxed, baled, and bundled, the identity of the property was fixed beyond peradventure by the statement that the property was identically that delivered to the defendant on a designated day. To hold otherwise would be to hold that a suit in trover can not be amended as to the property now in question, and the ruling would extend to the greater part of all personal property. In *Leitner* v. *Strickland,* 89 *Ga.* 363 (15 S. E. 469), the overruling of a demurrer to the effect that the description of the property sought to be recovered in trover was insufficient to identify it was sustained, and the judgment was affirmed by the Supreme Court. The precise objection presented by the demurrer was that the description of the property was insufficient to identify the personal property sued for, or to distinguish it from any other property of its kind. The description in the petition in the *Strickland* case was: "That hewn timber and those round logs which were cut from the land of petitioner and from the land of A. D. Cone by one B. J. Reese, and were by said Reese left and deposited in the waters of the great Ogeechee river at a point not far from the bridge of the Macon & Atlantic railroad, and being that timber and logs referred to in the contract between petitioner and said Reese, dated on the 15th day of April, 1891, and recorded in book L, folio 169, in the office of the clerk of the superior court of Bulloch county, said State, July 7, 1891, to which logs and timber petitioner claims title."

2. The second exception presented by the cross-bill is that the court erred in admitting in evidence the entry of the constable's levy, over the objection that the levy was void for indefiniteness. For the reasons stated above, we do not think that the levy is void. The Civil Code, § 5421, declares: "The officer making a levy shall always enter the same on the process by virtue of which such levy is made, and in such entry shall plainly describe the property levied on, and the amount of the interest of defendant therein." We think the levy in this case describes the articles levied on sufficiently, and the property levied on is said to be the property of M. Stein. The decisions in *Morton* v. *Gahona,* 70 *Ga.* 569, and *Haines*

v. *Richardson,* 61 *Ga.* 390, are not applicable, because in both of these cases there was a failure on the part of the officer to state whose property he was levying upon, or that the defendant had any interest therein. But even if the entry of levy was void, the constable would be liable, and it would not lie in the mouth of his bailee (and such the petition in this case alleged the defendant to be) to dispute the title of his bailor, or to assert that by reason of the invalidity of the act by which the bailor came into the possession of the bailment he is released from liability to return the property deposited with him for safe-keeping. "The bailee can not justify his refusal on the ground that the bailment is illegal. Although the bailor may have had no legal authority to make it, and even though it were made for the purpose of fraudulently secreting the goods from the bailor's creditors, yet the bailee is bound to restore at the demand of his bailor, and will not be permitted to set up the illegality of the bailment as an excuse for his own default. So far does this principle obtain, that although the title to the goods be in the bailee, and even though he may have received them in ignorance of his own right, having accepted the possession of them in the capacity of bailee, he is estopped from claiming them by title until he has fulfilled the obligations of the trust by returning them to his bailor. Although the bailee is estopped from setting up a jus tertii for the purpose of keeping the property for himself, the rule is subject to exception when the goods have actually been claimed by a third person. When this has been done it is quite proper, if the bailee chooses, to try the title to the property in this way, and the bailee may refuse to deliver the goods when he does so, relying upon the right and title and by the authority of such third person. But the bailee undertakes such a defense at his peril, and if the person by whose authority he defends has no title, the bailee is liable." From what has been said an affirmance of the judgment upon the cross-bill of exceptions necessarily results.

3. We think the court erred in directing a verdict, because the verdict directed was not the only possible result which could have been reached by the jury. It is true that the defendant testified that the property in question was entrusted to him to await the determination of the question as to whether the mortgage of the Bank of Blakely was a lien superior to the levy of the attachment on which the constable held the goods in question. But the wit-

ness for the plaintiff denied that this was the agreement, and thus raised a clear-cut issue of fact which should have been submitted to the jury. It is insisted that this issue became immaterial, because it appeared uncontradicted, in the evidence, that the lien of the defendant's mortgage was superior to the attachment, for the reason that it was prior thereto in date, covered the same property, and was duly executed and recorded. So far from these facts appearing in the record, there is no legal evidence to this effect, and the evidence upon this subject could properly have been excluded. It appears that the mortgage lien, which the defendant asserted was superior to the attachment, was executed and recorded in the State of Florida. The plaintiff objected to the introduction of the mortgage, upon the ground that the execution of the original had not been proved, that it had not been recorded in Georgia, and that the certification by the clerk of the Florida court was not sufficient. All of these objections seem to us to be well taken. There was no evidence which proved that the original mortgage had been legally executed. It is true that the evidence showed that Mr. James had seen what purported to be an original mortgage, and he testified as to its contents. But he did not testify to its execution. The mortgage was shown to be inaccessible; and for that reason secondary evidence of its contents was admissible. But "to justify the admission of secondary evidence as to the contents of a lost deed, or a deed without the jurisdiction of the court, not only the existence of the deed must be shown, but it must be shown to have been properly executed." *Calhoun* v. *Calhoun, 81 Ga.* 91 (6 S. E. 913). In the *Calhoun* case it was proposed to prove that the original paper did in fact exist, but the plaintiffs did not offer to show its execution. The same is true in this case. As said by Judge Simmons in the *Calhoun* case, supra, "We think the proper rule of law in regard to the admissibility of secondary evidence is, not only that the plaintiff must show the existence of the deed, but that he must show that it was properly executed."

The remaining questions which are presented by the record are sufficiently stated and ruled in the headnotes. The error of the judge in directing the verdict requires a new trial.

*Judgment reversed on main bill; affirmed on cross-bill.*