3334.   JAMES *v.* PEPPER, constable.

1. To render admissible secondary evidence of a lost mortgage purporting to have been made in another State, it must be shown that the lost original mortgage was executed in conformity with the law of that State. Proof that the signing of a paper in the State of Florida was attested by two witnesses, neither of whom signed officially, is insufficient to prove its legal execution as a mortgage, since the law of Florida requires a mortgage to be attested by an officer.

2. A levying officer may, at his own risk, deposit with a bailee, for safe keeping, personal property which he has subjected to levy; and in thus depositing it he does not relinquish possession, but merely selects an agent to retain possession in his behalf. The possession of this agent is still the possession of the levying officer; and a conversion of the property by the bailee, though it consist of nothing more than his failure to deliver on demand, entitles the officer to proceed by trover. Any agreement of a levying officer, affecting the disposition of property which has been subjected to a levy, is contrary to public policy, and void, if it tends to defeat, or in any wise affects, the legitimate result of the legal proceeding of which the levy forms a part.

DECIDED JANUARY 15, 1912.

Trover; from city court of Blakely—Judge Crosland presiding. March 9, 1911.

*J. R. Pottle, C. L. Glessner,* for plaintiff in error.

*W. A. Thompson, John R. L. Smith, H. M. Calhoun,* contra.

RUSSELL, J.   This is the second time that this case has been before this court. (See 7 *Ga. App.* 518, 67 S. E. 218.) None of the points presented at the former hearing are involved in the present writ of error, except the relevancy or admissibility of evidence relating to a mortgage under which the plaintiff claimed a lien. When the case was here before, we held that the evidence with relation to the mortgage was inadmissible, in the absence of proof of the proper execution of the mortgage. In the trial now under review the judge excluded the testimony with reference to the

mortgage; and exception is taken to that ruling. The motion to exclude this testimony was as follows: "We move to rule out the evidence in reference to the mortgage of the Bank of Blakely, and the mortgage itself, on the ground that it is illegal and irrelevant." Inasmuch as it was not shown that the mortgage, which appears to have been made in the State of Florida, was executed in compliance with the laws of Florida, the court could properly have sustained the motion, upon the authority of our former decision upon that point. Though the paper may have been written and signed by the mortgagor, it may not have been executed according to law. *Calhoun* v. *Calhoun*, 81 *Ga.* 93 (6 S. E. 913).

The copy of the mortgage which appears in the bill of exceptions is attested by two witnesses, but neither of them purports therein to be such an officer as is authorized by the law of Florida to attest a mortgage; nor does the witness Waxelbaum, who saw the mortgage signed, testify that he knew either of these witnesses to be such an officer. Perkins, who he says was carried to the place where it was signed, for the purpose of witnessing its execution, he had just then met for the first time; and the other witness, Mr. Brown, is shown by uncontradicted testimony to have been at the time the attorney for the mortgagee. Construing the evidence with relation to the execution of the mortgage most favorably to the defendant, the most that was shown was that one who was qualified by law to complete the execution of the mortgage as an attesting officer failed to perform that duty, and only signed his name individually.

In the motion which is quoted the objection was made that the testimony in relation to the mortgage, and the mortgage itself, were both irrelevant to the issue; and thus, for the first time in the case, is raised the question as to whether it is within the power of an officer, after he has levied a process of the court, to make any binding agreement with reference to the disposition of the property levied upon which would be at variance with his duty. There is some slight difference between the testimony in behalf of the plaintiff and that of the defendant as to the exact terms of the bailment under which the former turned the property upon which he had levied into the possession of the latter. It is conceded, however, by all parties that Pepper, as a constable, after having levied an attachment upon the property, consented for James to receive it

upon deposit, and that James knew the facts. Unless an officer can make, at his discretion, a disposition of property which he has seized under the mandate of a court, different from or contrary to its usual legal course, it would be contrary to public policy to permit him to defeat the due process of the law by an agreement of his as to the possession of the property by another, no matter of what nature that agreement might be. In other words, unless Pepper, as a constable, was authorized to fix the legal rights and liabilities of Harris, the plaintiff in the attachment which he had levied, by an agreement with James that the latter should hold the property levied upon until the termination of some other litigation, and that Harris would abide its result, it would be utterly irrelevant what agreement he made in that regard, and therefore entirely immaterial, as a matter of law, whether there was conflict between the parties as to the terms of this agreement, which, if contrary to public policy, would necessarily be a nullity. We have no doubt that it was in this view of the case that the trial judge held that all the evidence in relation to the mortgage was irrelevant; and, doubtless holding also, for the same reason, that the testimony as to the terms of the agreement (the agreement being contrary to public policy) was insufficient to present any issue in the pending action of trover, he directed the verdict in favor of the plaintiff. As we have already stated, this point was not presented when the case was here before, or it would have resulted in a termination of the litigation; for we are satisfied that the decision of the trial court in the case at bar was correct. It would not seem to require a citation of authorities to demonstrate that a levying officer, as such, has no power, by his agreement, to increase or diminish the rights of a litigant in whose behalf the processes of a court have been invoked and are being executed.

When this case was here before, in ruling upon the exception presented by the cross-bill, in which it was insisted that the levy was void for indefiniteness, we held (7 *Ga. App.* 521), that "even if the entry of levy was void, the constable would be liable, and it would not lie in the mouth of his bailee . . to dispute the title of his bailor, or to assert that by reason of the invalidity of the act by which the bailor came into the possession of the bailment he is released from liability to return the property deposited with him for safe-keeping. 'The bailee can not justify his refusal on the

ground that the bailment is illegal. Although the bailor may have had no legal authority to make it, and even though it were made for the purpose of fraudulently secreting the goods from the bailor's creditors, yet the bailee is bound to restore at the demand of his bailor, and will not be permitted to set up the illegality of the bailment as an excuse for his own default. So far does this principle obtain, that although the title to the goods be in the bailee, and even though he may have received them in ignorance of his own right, having accepted the possession of them in the capacity of bailee, he is estopped from claiming them by title until he has fulfilled the obligations of the trust by returning them to his bailor.' "

But if authority directly upon the point is needed to establish the statement that it is contrary to public policy for a levying officer to make a bailment which by possibility could defeat the legal result of the processes he is charged to execute, the principle is established in the decisions of many of our courts of last resort, that while a levy is of full force and virtue, a levying officer can not make any contract divesting himself of dominion over the property, except under such replevy or forthcoming bond as is prescribed by law.

In Burrall v. Acker (N. Y.) 23 Wendell, 606 (35 Am. Dec. 582), the court says that while it is perfectly legitimate for a levying officer to store property with a receiptor or custodian, any agreement with such person that the property shall be absolutely his upon paying the amount of the execution would be illegal and contrary to the rights of the defendant in execution; and an agreement which would place the property absolutely beyond the reach of the sheriff before a sale thereof at public auction would be equally illegal and contrary to the duty of the sheriff in reference to the plaintiff's right. No public officer can bargain away his power to discharge his official duty. Cole v. Parker, 7 Iowa, 167 (71 Am. Dec. 439); Harrington v. Crawford, 136 Mo. 467 (38 S. W. 80, 35 L. R. A. 477, 58 Am. St. R. 653); Hodsdon v. Wilkins, 7 Greenleaf, 113 (20 Am. Dec. 347). A receiptor or custodian in such case is but the servant or agent of the levying officer. He has no property in the chattels; he can not maintain trover for them in his own name. He can not set up a title to the property in a third person. He can only defend a trover suit against him on behalf of the officer on the

ground that the property has been taken from him by act of law, or, possibly, by force. Phillips *v.* Hall, 8 Wendell, 610 (24 Am. Dec. 113); Denny *v.* Willard, 11 Pickering, 519 (22 Am. Dec. 391); Pettee *v.* Marsh, 15 Ver. 454 (10 Am. Dec. 689).

*Judgment affirmed.*