LOYA v. BOWEN et al. (No. 1006.)

(Court of Civil Appeals of Texas. El Paso. Oct. 30, 1919. On Appellant's Motion for Rehearing, Nov. 13, 1919.)

1. BAILMENT ⊝⟆1—CHATTEL MORTGAGEE AS BAILEE OF PROCEEDS OF SALE OF ATTACHED WOOD.

Where the chattel mortgagee of cordwood, attached in suit against the mortgagor, authorized the sale of the wood on condition that the proceeds be turned over to him to hold in escrow awaiting final judgment in the suit, which was done pursuant to agreement between the attorneys for plaintiff and defendant mortgagor, the mortgagee became bailee of the proceeds of the sale.

2. PRINCIPAL AND AGENT ⊝⟆116(1)—SECRET LIMITATIONS ON AUTHORITY INEFFECTUAL TO RELEASE PRINCIPAL.

If attorneys whom a defendant authorized to make an agreement departed from his instructions, he is nevertheless, by well-settled rules, bound by it; secret limitations on the authority of his agents not being available to him.

3. BAILMENT ⊝⟆8—BAILEE OF FUND CANNOT ASSERT SUPERIOR RIGHT AGAINST BAILOR.

Where the chattel mortgagee of attached cordwood agreed with the attorneys for plaintiff and for defendant mortgagor that the wood might be sold and the proceeds turned over to him to hold in escrow awaiting final judgment, the mortgagee became a bailee of the proceeds, and could not apply them to the extinguishment or reduction of defendant mortgagor's debt to him, and could not assert any superior right in them until he had surrendered the fund to plaintiff, or paid it into court, this irrespective of registration statutes.

4. BAILMENT ⊝⟆23—IMPLIED AGREEMENT TO RETURN PROPERTY.

In the absence of an express agreement by the bailee to return the bailed property to the bailor, the law implies such an agreement.

5. CHATTEL MORTGAGES ⊝⟆219—AGREEMENT TO RECEIVE FUND AS BAILEE NOT A WAIVER OF BAILEE'S MORTGAGE LIEN.

Chattel mortgagee of attached cordwood, by his agreement with the attorneys for plaintiff and defendant mortgagor that the wood might be sold and the proceeds turned over to him to hold in escrow awaiting final judgment, held not to have waived his mortgage lien, superior to the attachment lien of plaintiff, nor to have done anything to estop him from asserting his lien after proper surrender of the fund in his hands or its deposit in court.

On Appellant's Motion for Rehearing.

6. APPEAL AND ERROR ⊝⟆839(1)—NO RULING ON QUESTION NOT RULED ON BELOW.

Where the trial court has never ruled on the question of marshaling of assets, it would be improper for the Court of Civil Appeals to undertake to do so.

Appeal from County Court, at Law, El Paso County; W. P. Brady, Judge.

Suit by Antonio Loya against James E. Bowen, wherein W. W. Medlock was impleaded as defendant. From an adverse judgment, plaintiff appeals. Reversed and remanded.

Brown & Wilchar, of El Paso, for appellant.

McKenzie & Loose, M. Scarborough, and C. R. Loomis, all of El Paso, for appellees.

HIGGINS, J. On November 17, 1917, W. W. Medlock gave to the Clint Mercantile & Banking Company a chattel mortgage on 2 mules, 1 cow, 88 cords of wood, and on his crop. J. E. Bowen was doing business under the name of the Clint Mercantile & Banking Company, and the mortgage was to secure a note of Medlock to said company in the sum of $223.60. The mortgage was duly registered November 20, 1917. On December 3, 1917, appellant, Loya, filed suit in the county court at law of El Paso county against Medlock to recover upon a money demand, and at the same time caused a writ of attachment to issue which was levied upon 100 cords of wood. This suit was numbered 6588. In January, 1918, Loya and Medlock by their respective attorneys entered into the following agreement:

"In the County Court of El Paso County, Texas.

"Antonio Loya v. W. W. Medlock. No. 6588.

"We, the undersigned attorneys of record, in the above entitled and numbered cause, agree that the wood which was in this cause attached by the plaintiff and was situated on the island near Fabens, Texas, may be sold by the defendant, W. W. Medlock, and the money arising from said sale to be turned over to J. E. Bowen, a merchant of Fabens, Texas, to hold in escrow awaiting the final judgment in this suit. [Signed] Brown & Wilchar, Attorneys for Plaintiff. Dolans, Purser & Peden, Attorneys for Defendant."

In accordance with this agreement the wood was sold, and its net proceeds turned over to appellee, Bowen, who applied the same upon the note of Medlock to said company. Subsequent to the sale of the wood, on, to wit, March 13, 1918, in cause No. 6588,

⊝⟆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Loya recovered judgment against Medlock for $253.75, with 6 per cent. per annum from date, with foreclosure of attachment lien upon the wood seized under the attachment theretofore issued.

Demand was made upon Bowen by Loya for the proceeds of the wood. Bowen declined to pay over the same, and this suit was brought against him by Loya to recover such proceeds. The amount of money turned over to Bowen from the sale of the wood' was $295.32, but it seems there are some deductions claimed for expenses incurred in selling. The net balance in Bowen's hands after allowing such deductions is $131.32. In the present suit Bowen impleaded Medlock, and asked for judgment over. Upon trial a peremptory instruction was given to find against Loya. A verdict was returned, and judgment rendered in accordance with this instruction, and Loya appeals. There is no conflict in the evidence upon the material facts governing the rights of the parties in the present suit. Such conflict as may exist is upon noncontrolling issues. The circumstances under which the agreement relative to the sale of the wood was entered into are as follows:

At the time of the agreement the winter was passing, and with the advent of warm weather the price of the wood would decline, and its marketing become more difficult. Medlock as the owner and Bowen as a lienholder were interested in its disposition prior to a decline in price and ensuing adverse market conditions. Medlock with his witnesses in cause No. 6588 were in the office of Medlock's attorneys. Mr. Bowen was present. Neither Loya nor his attorneys were present. The suggestion was made by some one that the winter was passing, and the wood should be sold. Bowen testified that—

He agreed to the sale of the wood, "provided the money due me comes out first and there was some further discussion over it. Mr. Peden said he would talk to Mr. Brown, or Mr. Wilchar, I forget which, and he asked for him over the phone. I had other matters to look after, and I said, 'If you gentlemen can reach that agreement, it will be all right with me, but it is necessary for me to know.' I said, 'Mr. Peden, I live here in town; you can call me over the 'phone;' and I gave him my number, I said, 'I would like to know by noon what is going to be done.' He didn't ring me, but I met him that afternoon about 2, or half past 2 o'clock, and I said, 'How about that?' and he said, 'It is all right.' I didn't go into any details with him, but as I understood the agreement the arrangements to be made was not what you have in the signed instrument here at all, because the expenses were to come out of the wood.

"I did not authorize Mr. Peden to make any agreement binding me; he was to tell me whether the arrangement was to be accepted or not. I wanted my money on my mortgage,' that was my purpose in being at the meeting, and I tried to make it very clear, I had a mortgage on record. I presumed every man in the room knew it from the time it was put on record."

Thereafter and upon the same day Medlock's attorneys made a verbal agreement with Loya's attorneys relative to the sale of the wood which two or three days later was reduced to writing, and is as above shown. There is no evidence that Loya or his attorneys had any actual notice of Bowen's mortgage. Loya's attorneys entered into the agreement at the suggestion of Medlock's attorneys, and they in no wise took the initiative in the matter.

### Opinion.

[1-3] It is very clear that under the agreement made by Loya's attorneys Mr. Bowen became the bailee of the proceeds of the sale. The terms of the bailment is evidenced by the written agreement. It is true Bowen says he did not authorize Mr. Peden (one of the attorneys for Medlock) to make any agreement binding him, but that was a conclusion, and the concrete facts to which he testifies disclose that he authorized the attorneys to make an agreement for the sale of the wood; that the attorneys did so and reported to him. It further conclusively appears that it was by virtue of this agreement that he acquired the fund. There is no hint of any fraud practiced upon him by Loya or his attorneys, and when he accepted the proceeds of a sale made under the agreement he became bound by its terms. If the attorneys whom he authorized to make the agreement departed from his instructions, he is nevertheless, by well-settled rules, bound by it. He cannot be permitted to avail himself of secret limitations upon the authority of his agent. This being his status, the question arises as to his right to assert a prior lien upon the fund and subordinate to his lien the attachment lien of Loya. · It is the well-settled general rule, supported by both public policy and reason, that the bailee cannot dispute his bailor's title as an excuse for his refusal or failure to redeliver the bailment. There are some exceptions, well recognized, which have no application here.

The rule is founded upon the doctrine of estoppel, and follows logically from a consideration of the contract of bailment. It implies a trust that as soon as the purpose of the bailment is effected the bailed property shall be restored to the bailor. The fiduciary nature of the contract and relationship of the parties necessarily precludes the idea that one would be permitted to obtain possession of personalty and when the purpose of the bailment had been answered refuse to surrender possession to his bailor upon the ground that he has a paramount right or title. The rule announced is supported by numerous authorities which it is unnecessary to review. In support thereof see the following: Simpson v. Wrenn, 50 Ill. 222, 99 Am. Dec.

511; Bursley v. Hamilton, 15 Pick. (Mass.) 40, 25 Am. Dec. 423; Jensen v. Eagle Ore Co., 47 Colo. 306, 107 Pac. 259, 33 L. R. A. (N. S.) 681, 19 Ann. Cas. 519; Pulliam v. Burlingame, 81 Mo. 111, 51 Am. Rep. 229; Swallow v. Duncan, 18 Mo. App. 622; Pepper v. James, 7 Ga. App. 518, 67 S. E. 218; Osgood v. Nichols 5 Gray (Mass.) 420; Bricker v. Stroud, 56 Mo. App. 183; Thompson v. Williams, 30 Kan. 114, 1 Pac. 47, 3 R. C. L. 86, 114; 19 Ann. Cas. 521, note; Bigelow on Estoppel (6th Ed.) 592; 6 C. J. 1108.

We have here a case where the bailee has obtained possession of funds by virtue of the bailment. The purpose of the bailment has been answered, and under the terms thereof it is the bailee's duty to surrender the funds to the bailor, Loya, but he refuses to do so, and in justification of his failure asserts a superior right. This we think he should not be permitted to do until he has surrendered the fund to Loya or placed same in the registry of the court to await the determination of the priority of right. Pepper v. James; Bricker v. Stroud; Simpson v. Wrenn; Bursley v. Hamilton, all cited supra.

[4] For this reason the cause must be reversed. No importance is attached to the fact that the registration of Bowen's mortgage affected Loya with constructive notice of Bowen's superior right. The rule with respect to the duty of a bailee to surrender is not affected by our registration statutes. The question here considered relates simply to the law of bailments. Appellee also suggests that the contract simply provides that the proceeds were to be held by Bowen "awaiting the final judgment", and did not provide for a surrender of the fund. But the manifest intention of the agreement was to require surrender to Loya if he prevailed in the suit. Furthermore, in the absence of an express agreement by the bailee to return the bailed property to the bailor, the law implies the same. 3 R. C. L. 114.

[5] We overrule the contention of appellant that Bowen waived his superior lien. There is nothing to indicate any intention on Bowen's part to make such waiver. Nor has he done anything to estop him from the assertion of his lien after proper surrender of the fund has been made or its deposit in the registry of the court.

Reversed and remanded.

### On Appellant's Motion for Rehearing.

[6] The question of marshaling of assets is not before this court at this time. The trial court has never ruled upon the question, and it would be improper for this court to undertake now to do so. We have no right to assume that the trial court will not properly rule upon the same when it undertakes to do so.

We see no occasion to modify or change the rulings in the original opinion. They were not inadvertently made, nor are they regarded as dicta, as is assumed by appellant. We think the trial court will have no difficulty in understanding the ruling that upon the record here presented Bowen has not waived his lien, nor is he estopped from asserting the same against the proceeds of the wood after he has surrendered the same to his bailor, Loya, or deposited same in the registry of the court to await a determination of the priority of right of Bowen's mortgage lien or Loya's attachment lien. The authorities cited in the opinion recognize the right of a bailee to assert a claim adverse to his bailor after surrender of the bailed article. After such surrender the status quo ante of the property is restored, and in the absence of exceptional circumstances the rights of the parties should be the same as before the bailment contract. When money is the subject of the bailment it occurs to us that it would be best to return it into the registry of the court, so that when the priority of right is finally determined the decree can be effectively and assuredly enforced.

Motion overruled.